RUTH I. LAKE, APPELLEE, v. CLYDE P. SOUTHWICK ET AL., APPELLANTS.

198 N. W. 2d 319

Filed May 26, 1972. No. 38302.

Wilson, Barlow & Watson and Kile W. Johnson, for appellants.

Bauer & Galter, for appellee.

Heard before WHITE, C. J., BOSLAUGH, McCOWN, and CLINTON, JJ., and COLWELL, District Judge.

COLWELL, District Judge.

This is a personal injury case. Plaintiff Ruth I. Lake received serious and painful injuries in a two vehicle collision on May 16, 1970, on a four-lane highway 1 mile west of Lincoln, Nebraska. Plaintiff driving her family car west in the left lane collided with a truck driven by defendant Clyde P. Southwick, employed by defendant Lawrence L. Sintek. Both car and truck were proceeding west on the highway, and they col-

lided when the truck made a left turn from the right lane in front of plaintiff's car and stopped in the median opening for turning, leaving part of the truck extended in plaintiff's lane and part in the eastbound lane. There was conflict in the evidence as to whether the turn signals were operating on the truck. The jury returned a verdict of $19,000 for plaintiff and judgment was entered for that amount. Defendants' motion for new trial was denied and this appeal was perfected. The issue of defendants' liability is not presented in this appeal. Defendants contend that the evidence does not support submitting to the jury the issue of damages for loss of future earning capacity, and in particular the evidence of the duration of the injury to plaintiff's knee was speculative.

At the time of the accident, plaintiff was 32 years of age, married, and living with her husband and three children in Lincoln, Nebraska. She was a graduate of the University of Nebraska and employed as a third grade teacher with 4 years teaching experience. In addition to her teaching duties she performed all usual household duties. Her general health was good.

As a result of the accident, plaintiff's injuries included cuts on her face, tongue, and inside mouth, one cut penetrating the tongue; five teeth loosened, permitting movement of one-eighth inch; bruised eye, face, arm, back, stomach, left knee, and both legs; and a severe 2 ¾ inch laceration midway between lip and point of chin where her teeth penetrated and were caught in the lip. It required 91 stitches to close the wounds to face, tongue, and inside mouth. She was hospitalized 4 days and confined to bed at home part of the time until the fall of 1970. Because of loose teeth and malocclusion plaintiff was unable to eat anything but soft foods until late in the fall of 1970.

In June of 1970 plaintiff moved with her family to Hastings, Nebraska, where her husband had accepted a teaching position. In November of 1970 plaintiff ob-

tained a position in the Hastings elementary school system teaching six students remedial mathematics and reading for half days, and she was so employed at the time of trial. Plaintiff continued irregular consultation and treatment with medical doctors and dental surgeons up to the time of trial on April 14, 1971.

At the time of trial, three of her teeth were still loose, there was inconclusive evidence of "pulp" testing conducted to determine if the injured teeth might be dead; plaintiff continued to experience difficulty in chewing food; all bruises had healed; the cut to the tongue had healed without resultant damage to either eating or speaking; the cut to the lip had healed with a fine line scar and a small raised mass in the middle, resulting in a permanent diminished sensation, and there is evidence that this condition affected plaintiff's speech at times, including some difficulty in speaking and pronunciation of words in her teaching duties; plaintiff regularly experiences fatigue and nausea; plaintiff's left leg was sore and ached most of the time, and always ached following prolonged walking, standing, riding in a car, and sitting; and she walked with a limp at times. Plaintiff testified that because of leg pain she could not teach full time, household duties were difficult, and she could not participate in family physical activities.

Dr. Harold R. Horn, M. D., an orthopedic surgeon, examined plaintiff in February 1971, finding objective tenderness over the posteromedial aspect of the left knee joint space, and a hyperesthesia or exaggerated sensation above it; there was no tenderness in the calf of the left leg, no fluid in the knee, no swelling, and no instability. It was his opinion that plaintiff's complaint of pain in her left leg was referred pain from her left knee. Further he related: "Q- Assuming further the same thing, she's working half days and at the end of a half day she feels pain in the leg and she becomes fatigued and tired, and a year has gone

by almost, do you have an opinion as to whether this will continue in the future? A- Yes. Q- And what is your opinion? A- It would appear that it should continue. Q- I would imagine this sort of thing is difficult to say how long it would continue. Is this correct? A- Yes. Q- From the examination you have made to this point, is there an indication of further medical treatment that's needed? A- Well, I would think so. Q- And do you know now, without further examination, what the nature of that might be? A- No." The doctor went on to explain some tests, surgery, and diagnosis that might be employed. On cross-examination, Dr. Horn said: "Q- And if she had some pain in her left leg since last fall, or early last fall, would you expect that eventually she might seek further diagnostic treatment? A- Yes. Q- And if further diagnostic testing indicated treatment of one kind or another, is there any reason to believe that something couldn't be done for Mrs. Lake that would relieve her of her symptoms? A- Well, I would certainly think so."

Defendants offered no evidenie relating to plaintiff's injuries or their duration, pain, or loss of future earning capacity.

The process of ascertaining the amount of compensation to be awarded for impairment of the capacity to work or to earn requires (1) the determination of the extent to which such capacity has been diminished, (2) the determination of the permanency of the decrease in earning capacity, and (3) the fixing of the amount of money which will compensate for the determined extent and length of the impairment, including a reduction of the award to its present worth. 22 Am. Jur. 2d, Damages, § 93, p. 136. See, also, collection of cases in Annotation, 18 A. L. R. 3d 88.

Defendants rely on Schwab v. Allou Corp., 177 Neb. 342, 128 N. W. 2d 835, wherein the court stated: "Damages for a permanent injury may not be based on spec-

ulation, probabilities, or uncertainty but must be shown by competent evidence that such damage is reasonably certain as the proximate result of the pleaded injury. * * * the plaintiff did not prove permanent loss of earning power, although she did show permanent injury." In the Schwab case the plaintiff, a teacher, had a 10 to 15 per cent partial permanent disability from a fractured ankle. The medical expert could not relate this permanent disability to the plaintiff's work performance. The court said: "There is evidence that she had a partial permanent disability in the ankle that inconveniences her in climbing stairs and causes discomfort on those occasions, and in standing while teaching and in certain work on the playground with the students. Nothing is shown to indicate that she will not be able to earn the same salary in the future or to what extent her earning power would be diminished."

"In testing the sufficiency of the evidence to support a verdict, it must be considered in the light most favorable to the successful party. Every controverted fact must be resolved in his favor and he should have the benefit of every inference that can be reasonably drawn therefrom." Speedway Transp., Inc. v. DeTurk, 183 Neb. 629, 163 N. W. 2d 283.

The time for allowance of damages for loss of future earning capacity is at the time of trial. The injured party is not required to postpone her right to recover damages for her injuries until there is either full recovery, surgery, exhaustion of possible therapy, and treatment, although she may choose to do so. Defendants argue that the leg ache could be relieved if the cause was diagnosed and treated. Whether or not plaintiff used reasonable care to seek a cure and mitigate her damage was defendants' burden of proof; that was not made an issue here. See Colton v. Benes, 176 Neb. 483, 126 N. W. 2d 652.

In Schwab there was partial permanent disability but no evidence relating that disability to the work per-

formance of the injured party. Here there is medical evidence of permanent injury to the lip and that the pain in the leg would continue in the future, but no mathematical assessment in terms of permanence or duration; there is competent evidence of the injuries, the extent thereof, their duration, and their relation to the plaintiff's work performance. The evidence was sufficient for submission to the jury. See Kowalke v. Farmers Mutual Automobile Ins. Co., 3 Wis. 2d 389, 88 N. W. 2d 747. It is then for the jury to assess the damage. "The fact that the amount of damage may not be susceptible of exact proof or may be in a degree uncertain or difficult of ascertainment should not be a bar to any recovery." Jacobsen v. Poland, 163 Neb. 590, 80 N. W. 2d 891. See, also, Baylor v. Tyrrell, 177 Neb. 812, 131 N. W. 2d 393.

Defendants contend that the court erred in giving instruction No. 15 which includes, in substance, the form of NJI Nos. 4.01, 4.02, 4.03, 4.04, 4.06, and 4.07, and that the court erred in giving instruction No. 16 which generally instructs the jury in computing future damages on account of plaintiff's injuries or loss of earning capacity. Considering these instructions, examined with all of the other instructions given, they do fairly and adequately inform and instruct the jury on the issues presented by the pleadings and the evidence.

The judgment of the trial court is supported by the evidence. There being no error in the proceedings, the judgment should be affirmed.

AFFIRMED.