SIDNEY R. HENDERSON, APPELLEE, v. HELEN M. JOPLIN, FORMERLY HELEN M. BULLOCK, APPELLANT.

217 N. W. 2d. 920

Filed May 16, 1974. No. 39294.

Wright & Simmons, for appellant.

Robert M. Harris, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, Mc-COWN, NEWTON, CLINTON, and BRODKEY, JJ.

McCOWN, J.

This is an action for breach of a contract which provided for the formation of a corporation; the ownership of the stock; and the employment of both contracting parties by the corporation. The jury returned a verdict in favor of plaintiff in the sum of $6,000; $5,000 for the loss in value of his shares of corporate stock; and $1,000 for lost salary. The defendant has appealed.

Following the death of her husband, the defendant acquired a retail liquor business operated as a sole proprietorship. To induce plaintiff to enter the business, the defendant made an agreement with the plaintiff on August 29, 1967, to incorporate the business. The pre-incorporation agreement provided that the plaintiff and

defendant would incorporate the liquor business owned by the defendant. After securing the necessary licenses, the corporation would purchase from the defendant all the assets of the business, effective October 1, 1967. The defendant was to receive capital stock of the corporation in exchange for the assets of the business. Plaintiff was to purchase 25 percent of that stock from the defendant, 20 percent down at the time of sale and the balance by delivery of a promissory note on stated terms. The agreement provided that the corporation was to be governed by a board of directors of not more than three and that so long as the plaintiff owned the stock, he was entitled to elect one director. The agreement also provided that the defendant "shall be the President and Treasurer of the Corporation" and the plaintiff "shall be the Vice President, Secretary and General Manager. Each of the parties shall thereafter draw similar salaries to be agreed upon by the Directors and no bonuses shall be paid by the corporation to either of the parties."

The agreement also provided: "Each of the parties shall devote full time to the business of the corporation and until changed by the Board of Directors each shall be paid a salary of $700.00 per month, payable on the 15th and the 1st of each month." It also provided: "(T)he parties will enter into a written agreement whereby each agrees that she or he will not sell any stock in the corporation without giving the other the first option to purchase it" except that the defendant "may sell or give any of her stock to her son, Charles Jefforey Joplin."

On the same day, the parties also signed articles of incorporation for Chuck Joplin's Beverage Super Market, Inc.

The company was duly incorporated and the parties entered into performance of their agreement. Plaintiff's 25 percent of the stock was 105 shares, for which the purchase price was $10,500. Defendant held the

remaining 75 percent of the stock. All the terms of the agreement were performed initially except that no written agreement not to sell stock without first offering it to the other was ever entered into. At a later time the defendant transferred some shares of stock to her son but at all times the defendant retained the ownership of a majority of the capital stock. Except for the failure to reduce it to writing, there is no evidence that either party ever breached the agreement with respect to the prohibition against selling of stock without first offering it to the other.

The business was prosperous during the years 1967, 1968, and 1969. Sometime during the year 1970, it became apparent that the business was not continuing to be as prosperous as it had been in previous years. A large part of the testimony is devoted to assessing the blame for this lack of prosperity. Several things of importance occurred in 1970. The defendant remarried in March. She transferred some of her stock to her son. In May, liquor by the drink became legal in Scottsbluff, the business obtained such a license, remodeled the premises, and added live entertainment. Grocery stores and supermarkets obtained package liquor licenses in Scottsbluff and began to sell beer and liquor at reduced prices.

In December 1970, having become discouraged as to the prospects, the plaintiff proposed to the defendant that she buy him out or he buy her out or that they sell to someone else. The defendant did not commit herself. On January 19, 1971, the defendant's attorney wrote a letter to plaintiff advising him of a special meeting of the board of directors called for January 25, 1971. The letter also stated: "Mrs. Bullock states that you advised her that you would like to get out of the business and would like to have the business sold. She, however, does not wish to sell and under the circumstances feels that you are no longer a good manager for the business. At the meeting she intends to bring up the matter of

terminating your employment as manager as of January 31, 1971."

At the meeting of the board of directors on January 25, 1971, the plaintiff stated that he "had never been fired from a job before and I would like to resign." He submitted his written resignation as general manager. His resignation was accepted. The plaintiff then paid the defendant the balance due on the note for purchase of his stock and departed. The defendant's son was then appointed general manager and secretary. Plaintiff completed work for the month of January 1971. His salary at the time of termination of his employment was $900 a month.

By action of the board of directors, the plaintiff voting "no," the liquor business was sold on June 30, 1971, for $8,000, plus the inventory, and cancellation of its lease obligations.

Under the instructions of the court, if the jury found for the plaintiff on the issue of breach of contract, it was to fix the damages for (1) the loss of value of the plaintiff's shares of stock on January 25, 1971; and (2) the salary lost for the months of February, March, April, May, and June 1971. The jury's verdict was for $5,000 on item (1) and $1,000 for item (2).

The defendant contends that the cause of action for breach of the preincorporation contract belongs to the corporation and not to the plaintiff. She also asserts that agreements between directors or stockholders purporting to control the actions of directors after they are elected in handling the ordinary business of a corporation are void. The modern rule is contrary. 1 Fletcher Cyclopedia Corporations (1963 Rev. Ed.), section 191, page 714, states: "No public policy forbids contracts for promoting and managing a corporation according to law and for lawful purposes, or for determining among themselves what the stock shall be and how it shall be divided, or for election of themselves as officers and employment by the corporation when formed."

A large majority of jurisdictions hold that such agreements are not invalid unless inspired by fraud or unless they will prejudice other stockholders. Nebraska has clearly adopted the majority rule where the control agreement was between two stockholders owning a majority of the stock of the corporation. In E. K. Buck Retail Stores v. Harkert, 157 Neb. 867, 62 N. W. 2d 288, this court said: "We conclude that stockholders control agreements are not invalid per se. If they are based on a sufficient consideration between the contracting stockholders they are valid and binding if they do not contravene any express constitutional or statutory provision or contemplate any fraud, oppression, or wrong against creditors or other stockholders, or other illegal object. Where such a situation appears it is not illegal or against public policy for two or more stockholders owning the majority of the shares of stock to unite upon a course of corporate policy, or upon the officers, including directors, whom they will elect."

It is difficult, if not impossible, to put the law as to the liability on promoters' contracts into any definitive terms as to a particular class of contract. Such agreements are covered by the general principles of contract law, and, ordinarily, are governed by the intention of the parties as expressed. We think it clear that the agreement here, while technically a preincorporation agreement between promoters, was intended to serve as a stockholders' agreement after incorporation. There is no evidence whatever that there was any fraud or prejudice against anyone, and the two contracting parties were to be and became the holders of all the stock.

This case has many factual similarities to the North Carolina case of Wilson v. McClenny, 262 N. C. 121, 136 S. E. 2d 569. In upholding the validity of a preincorporation agreement between promoters dealing with the designation of officers and directors of a company to be formed, and the salaries to be paid, that court said: "A competent person gainfully employed in his chosen field,

will not ordinarily give up a secure position to take another with a new enterprise without some assurance as to his future. No corporation could ever be created without a preliminary agreement between the parties proposing to form it as to the mode and manner of doing so. * * * The promoters of a corporation occupy a relation of trust and confidence towards the corporation which they are calling into existence as well as to each other, and the law requires of them the same good faith it exacts from directors and other fiduciaries. * * * There is no evidence here that the contract between the plaintiff and defendants was not made in good faith or that, at the time it was made, it was not in the best interest of the corporation. Prima facie, it was a valid exercise of the promoter's right to contract."

That case also makes it clear that any agreement of this kind for the employment or continued employment of a corporate officer contains the implied condition that the agreement may be terminated at any time for cause. While there was some attempt to establish cause for the plaintiff's discharge, the jury verdict removes the issue from doubt, and the evidence supports the jury verdict that the plaintiff's employment as general manager at a salary of $900 per month was terminated by the defendant without just cause and constituted a breach of the agreement.

The defendant asserts that there is insufficient proof as to the amount of salary lost because the evidence disclosed that the plaintiff was employed after February 1, 1971, and before June of 1971, and plaintiff had a duty to mitigate damages. There was no evidence as to the exact nature of his new work for an insurance company nor what his salary or income was. The defendant therefore contends that the evidence of damages for lost salary is speculative and conjectural.

There is no question that the plaintiff's salary at the time his employment was terminated was $900 per month,

and that 5 months' salary is involved. While it is true that the plaintiff had a duty to mitigate damages, the burden of proving matters in mitigation or reduction of the amount of plaintiff's damages was on the defendant. See, Lake v. Southwick, 188 Neb. 533, 198 N. W. 2d 319; Fulton v. Tennessee Walking Horse Breeders' Assn., 63 Tenn. App. 569, 476 S. W. 2d 644. The latter case makes it clear that any matter in mitigation of damages should be considered but that in the absence of any evidence pertaining to mitigation of damages, the amount of damages for breach of an employment contract is measured by the salary rate under the contract. It is obvious that the jury took into account the substituted employment of the plaintiff in view of the fact that the jury verdict is for only $1,000 while the full amount of the lost salary was $4,500. The plaintiff has not cross-appealed. The verdict of the jury for damages for loss of salary in the sum of $1,000 must therefore be affirmed.

We turn now to that portion of the verdict awarding damages of $5,000 for the loss of value of the plaintiff's shares of stock on January 25, 1971. In this connection the only evidence as to the value of plaintiff's shares of stock on January 31, 1971, was the statement of plaintiff: "I would say it was around $20,000." The balance sheet of December 31, 1970, if goodwill were subtracted, would show a net worth of the business of less than $20,000, and plaintiff's one-fourth interest would be approximately $5,000. There is no evidence as to the value of the plaintiff's shares as of the date of sale of the business on June 30, 1971. By implication from indirect evidence it might be determined that plaintiff's shares as of that date were worth nothing.

Even if it be accepted that the value of plaintiff's shares substantially decreased after January 25, 1971, there is no evidence that any decrease was the result of any breach of contract, or specifically the termination of plaintiff's employment as general manager. There

is nothing to indicate that any decrease or decline was not due to the same local economic causes which had already persuaded plaintiff that the business should be sold. There is no evidence that if plaintiff had been retained there would have been no such decrease. Neither is there evidence that the conduct of his successor as general manager produced the decrease.

It is also apparent from the evidence that any failure of the defendant to devote full time to the business prior to January 25, 1971, had been waived by the plaintiff. Any subsequent default on that score, along with any other claims of subsequent misconduct by defendant, constituted wrongs against the corporation or its property which would reduce the value of all corporate stock, and not plaintiff's stock alone. Such actions did not constitute additional breaches of the pre-incorporation agreement, nor result in special and individual damages to the plaintiff.

In E. K. Buck Retail Stores v. Harkert, 157 Neb. 867, 62 N. W. 2d 288, we acknowledged the rule that a stockholder may sue for breach of a stockholders' control agreement when he has sustained a loss separate and distinct from that of other stockholders. We held that a stockholder may not bring an action in his own name to recover for wrongs done to the corporation or its property which result in a decrease of value of all corporate shares. The fact that the action is based on a stockholders control agreement does not authorize a personal action unless the injury is to him or his stock alone and not common to all stockholders. Any decrease in value of plaintiff's stock here did not result to his stock alone and any cause of action for such damage remains in the corporation. That portion of the verdict of the jury awarding damages of $5,000 to the plaintiff for the loss in value of his shares of stock was erroneous.

That portion of the judgment of the District Court

awarding damages to plaintiff in the sum of $1,000 is affirmed, and that portion of the judgment awarding damages of $5,000 for loss of value of plaintiff's shares of stock is reversed and vacated.

AFFIRMED IN PART, AND IN PART REVERSED.