DOROTHY URYASZ, APPELLEE, V. ARCHBISHOP BERGAN MERCY
HOSPITAL, APPELLANT.

431 N.W.2d 617

Filed November 18, 1988.    No. 87-048.

Michael F. Kinney and David A. Blagg, of Cassem, Tierney, Adams, Gotch & Douglas, for appellant.

Donald J. Loftus, P.C., for appellee.

BOSLAUGH, CAPORALE, and GRANT, JJ., and BUCKLEY, D.J., and COLWELL, D.J., Retired.

COLWELL, D.J., Retired.

In this negligence case, Dorothy Uryasz, plaintiff, claims that while she was a patient at defendant hospital, she was injured by an injection given by a nurse. Plaintiff recovered a jury verdict and judgment against defendant for $105,000. Defendant appeals; we reverse and remand for a new trial on the issue of damages.

Plaintiff, age 46 years, sustained a neck injury at work in October 1982, for which she was hospitalized in January 1983 and again, in defendant hospital, on March 8, 1983. On March 17, 1983, her doctor ordered an injection, which Nurse Joyce Hassing administered in plaintiff's left groin area. There is evidence that administering an injection in that groin area was an irregular procedure. Plaintiff felt pain down her left leg, and, when she was trying to walk 1 hour later, her left leg was weak. Following dismissal from the hospital, she experienced numbness in her left leg, foot drop, and depression. Plaintiff has not worked since her claimed leg injury. In February 1986, plaintiff began 4 weeks of therapy at the Pain Management Center (PMC), Omaha, Nebraska, resulting in improvement in her leg condition. Expert testimony supported plaintiff's theory that the injection injured her femoral nerve, causing pain, a psychogenic injury, and residual damage to her left leg. Impairment of future earning capacity was a damages issue. Medical damages were about $16,000.

Her work history began in 1974, when she started working at a pharmacy part time, tending the cash register and helping to stock shelves. Later, she worked full time, and in 1977, she briefly managed the store when the owner left town, earning $5.75 per hour as manager. In 1978, she and her husband bought the store, which she managed up to March 8, 1983; while they owned the store, it operated at a loss.

There was conflict in the evidence concerning negligence, liability, injuries, and damages, as shown by defendant's witnesses, John Goldner, M.D., a neurologist, Omaha, Nebraska; Fred D. Strider, Ph.D., a clinical psychologist, Omaha, Nebraska; Frank J. Menolascino, M.D., a psychiatrist, University of Nebraska College of Medicine, Omaha, Nebraska; and Nurse Joyce Hassing, who denied

administering the injection in the groin area.

Where a party has sustained the burden and expense of trial and has succeeded in securing a verdict of the jury on the facts in issue, he has the right to keep the benefit of that verdict unless there is prejudicial error in the proceeding in which it was secured. *Schmidt v. Schmidt*, 228 Neb. 758, 424 N.W.2d 339 (1988).

Six errors are assigned: (1) allowing witness Dr. David Jasper to testify regarding causation of plaintiff's injuries; (2) allowing witness Dr. Edward Schima to testify regarding causation of plaintiff's injuries; (3) allowing witness Dr. Charles Golden to testify regarding causation of plaintiff's injuries and the effect on plaintiff's future earning capacity; (4) allowing Dr. Jerome Sherman to testify regarding diminution of future earning capacity; (5) submitting the issue of loss of future earning capacity to the jury; and (6) instructing the jury on a specification of negligence not sustained by the evidence.

Assignments Nos. 1 and 2 are briefly discussed together.

> Expert testimony should not be received if it appears the witness is not in possession of such facts as will enable him to express a reasonably accurate conclusion as distinguished from a mere guess or conjecture. . . . Where the opinion testimony of an expert witness does not have a sound and reasonable basis it should be stricken.

*Clearwater Corp. v. City of Lincoln*, 202 Neb. 796, 804, 277 N.W.2d 236, 241 (1979).

The first two assignments of error deal with the admission of testimony of Drs. Jasper and Schima. Dr. Jasper was Uryasz' treating physician at the time the injection occurred, and Dr. Schima, a neurologist, consulted with Dr. Jasper concerning the cause of Uryasz' complaint. At trial, counsel for defendant objected to the admission of opinions on the cause of the numbness of Uryasz' left leg, unless the opinions were based upon a reasonable degree of medical certainty.

As to the testimony of Dr. Schima, no appealable error occurred in allowing his testimony at trial. Most of the testimony Dr. Schima gave regarding the cause of the numbness was elicited on cross-examination. The detailed cross-examination of Dr. Schima waived any objection

defendant may have had to his testimony. See *Anson v. Fletcher*, 192 Neb. 317, 220 N.W.2d 371 (1974).

The conclusion Dr. Jasper reached was that the injection could not have caused the numbness in Uryasz' leg. Defendant concedes this in its brief. As with Dr. Schima, defendant conducted an extensive cross-examination of Dr. Jasper, which included the cause of the numbness and which was a waiver of its objection. Further, their respective opinions had a reasonable basis, and they were properly received in evidence as being within the discretion of the trial judge, *Herman v. Lee*, 210 Neb. 563, 316 N.W.2d 56 (1982), and as assistance to the jury to understand the evidence and to determine facts. Neb. Rev. Stat. § 27-702 (Reissue 1985).

The third assignment objects to the opinions of Dr. Golden, a psychologist and director of the PMC at the University of Nebraska Medical Center, concerning (1) causation and (2) the impairment of plaintiff's future earning capacity.

Plaintiff was referred to the PMC in September 1985. After several weeks of counseling she reluctantly entered PMC's therapy program in February 1986 to treat her pain, numbness in her left leg, loss of use of that leg, and depression. After 4 weeks, when discharged, her therapist described her then condition as improved. Her walk was normal, she was not dragging her shoes, and her gait pattern was about normal. However, she had a continuing condition of weakness in the left leg compared to her right leg, and the muscle strength in her left leg was improved but not normal.

The medical evidence establishes as fact that an injury to the femoral nerve will not directly cause pain or numbness in the leg below the knee. Nevertheless, it is plaintiff's theory that plaintiff experienced a posttraumatic stress disorder, a psychogenic injury, following the groin injection, causing plaintiff's claim of pain and numbness in her left leg and including her foot. "[A] workman is entitled to recover compensation for neurosis if it is a proximate result of his injury and results in disability." *Cardenas v. Peterson Bean Co.*, 180 Neb. 605, 608, 144 N.W.2d 154, 157 (1966).

It was Dr. Golden's opinion, based on reasonable psychological certainty, that "her problem that we saw was

caused by the incident of the injection at Bergan Mercy Hospital in 1983" and that "I am sure of the diagnosis that the injection was the proximate cause of the pain." Dr. Golden then gave his opinion relating to the issue of impairment of future earning capacity within a reasonable psychological certainty, that "there is a residual impairment" in Uryasz' left leg and that "it will continue" in the future. Further details of this part of his testimony are discussed later.

There was a sound and reasonable foundation for these opinions. Dr. Golden possessed special skills, and admission of the called-for opinions relating to causation and impairment was within the discretion of the trial judge, *Herman v. Lee, supra,* and would assist the jury, § 27-702. There was no error in allowing these opinions. Their weight and credibility were for the jury.

Assignment No. 6 challenges the negligence instruction No. 2(f), for the reason that it is not supported by competent evidence. *Brown v. Kaar,* 178 Neb. 524, 134 N.W.2d 60 (1965); *Pick v. Fordyce Co-op Credit Assn.,* 225 Neb. 714, 408 N.W.2d 248 (1987). Particularly, No. 2(f) recites, "in failing to supervise the nurse who administered the injection to Plaintiff." A full understanding of this instruction requires consideration of parts of instructions Nos. 7 and 2, as follows. Instruction No. 7 provides in part:

> Before the Plaintiff can recover damages against Defendant Archbishop Bergan Mercy Hospital, the burden of proof is upon the Plaintiff to establish, by a preponderance of the evidence, each and all of the following elements or propositions:
>
> (1) that Defendant Archbishop Bergan Mercy Hospital was negligent in the care of the Plaintiff, that is that it departed from the standard of care in general use in this or a similar community, as defined in Instruction Nos. 4 and 5, in one or more of the particulars alleged against this Defendant in Instruction No. 2;
>
> (2) that such professional negligence, if any, of Defendant Archbishop Bergan Mercy Hospital was a proximate cause of the injury to Plaintiff, if any.

Instruction No. 2 provides in part:

She alleges the Defendant failed to comply with the standards of practice applicable to it in the following particulars:

(a) in giving the injection in Plaintiff's left groin;

(b) in failing to give the injection in an area of Plaintiff's body which would not subject her to a risk of nerve damage;

(c) in failing to heed Plaintiff's protestations at the onset of the injection;

(d) in continuing to administer the injection after Plaintiff protested of the pain that ensued with the injection;

(e) in continuing to administer the injection after Plaintiff demanded that the injection be stopped; and

(f) in failing to supervise the nurse who administered the injection to Plaintiff.

The six particular allegations of negligence in instruction No. 2 were taken from plaintiff's amended petition. At the instruction conference, defendant's counsel made a general objection to instruction No. 2, as follows:

Instruction No. 2, Defendant objects to the giving of Subparagraph D, E, and F for the reason that I believe D and E are repetitious and redundant and duplicitous of what is set out in the allegation in Subparagraph C; I am also going to object to Subparagraph B because I think it is repetitious and redundant of paragraph A; and I object because I don't think there was any evidence in the record to support that allegation.

The purpose of an instruction conference is to give the trial court an opportunity to correct any errors being made by it. *Haumont v. Alexander*, 190 Neb. 637, 211 N.W.2d 119 (1973). Defendant did not offer a substitute instruction, *Beatty v. Davis*, 224 Neb. 663, 400 N.W.2d 850 (1987), and counsel did not clearly state a reason for his objection to No. 2(f); in so doing, counsel was less than helpful to the trial judge in the preparation of the jury instructions. Under these attending circumstances, the record comes close to being tantamount to a failure on the part of defendant to make an objection to proposed instruction No. 2(f), which would have precluded it

from raising that claimed error on appeal, *Haumont v. Alexander, supra*; however, we approve instruction No. 2(f) on other grounds.

Basic to plaintiff's theory of recovery is the doctrine of respondeat superior, i.e., the relationship of master and servant existed between defendants and Nurse Hassing at the time of the alleged injury, the alleged administering of the injection in plaintiff's groin area resulted in the alleged tort, and Nurse Hassing was acting within the scope of her employment. See *Strong v. K & K Investments*, 216 Neb. 370, 343 N.W.2d 912 (1984). The evidence would support a jury finding that the relationship of master and servant existed.

"Jury instructions are to be read as a whole, and when they fairly submit the case and do not mislead the jury, there is no prejudicial error." *First West Side Bank v. Hiddleston*, 225 Neb. 563, 567, 407 N.W.2d 170, 173 (1987).

A judgment will not be reversed by reason of any error or defect in the proceedings which does not affect the substantial rights of the adverse party. *Emery v. Mangiameli*, 218 Neb. 740, 359 N.W.2d 83 (1984). See, also, Neb. Rev. Stat. § 25-853 (Reissue 1985).

Instruction No. 2(a), (b), (c), (d), and (e) all allege particular acts of Nurse Hassing's negligence in the administering of the injection in plaintiff's groin area, for which there is some supporting evidence as to each allegation.

Instruction No. 2(f) concerns the negligence of defendant to supervise Nurse Hassing contrary to applicable standards of practice, for which there is no supporting evidence, as defendant claims. However, submitting instruction No. 2(f) was not prejudicial to defendant because the failure to supervise would be of no consequence unless it was the cause or resulted in Nurse Hassing's negligent act(s) of administering the injection. Since defendant would be liable for the negligent acts of Nurse Hassing under the doctrine of respondeat superior, the result is the same for defendant on the issue of liability. The giving of instruction No. 2(f) was not misleading, it did not affect any substantial rights of defendant, and it was not reversible error.

All of the assignments of error relating to liability having

been decided in favor of plaintiff-appellee, we turn to the issue of damages.

Assigned errors Nos. 4 and 5 relate to the issue and proof of impairment of future earning capacity, a recoverable item of general damages. *Baylor v. Tyrrell*, 177 Neb. 812, 131 N.W.2d 393 (1964).

Damages for permanent impairment of future earning capacity may not be based on speculation, probabilities, or uncertainty, but must be shown by competent evidence that such damages are reasonably certain as the proximate result of the pleaded injury. A person to whom another has tortiously caused harm is entitled to compensatory damages if he establishes by proof the extent of such harm and the amount of his damages with reasonable certainty. See *Schwab v. Allou Corp.*, 177 Neb. 342, 128 N.W.2d 835 (1964).

In connection with this issue, it is important to understand that the recovery in terms of money is for impairment of a person's *capacity* to earn in the future and not for loss of earnings, although past earnings are admissible to prove impairment, *Jacobsen v. Poland*, 163 Neb. 590, 80 N.W.2d 891 (1957); this concept of damages is not generally understood by the lay public and jurors. The record before us does not adequately contain an explanation of those differences to aid and guide the jury in its understanding of this damages issue as related to the evidence.

Not intended as a definition, Restatement (Second) of Torts § 924, comment *d*. at 525-26 (1979), provides:

> *Loss or impairment of earning capacity for the future.* The extent of future harm to the earning capacity of the injured person is measured by the difference, viewed as of the time of trial, between the value of the plaintiff's services as they will be in view of the harm and as they would have been had there been no harm. This difference is the resultant derived from reducing to present value the anticipated losses of earnings during the expected working period that the plaintiff would have had during the remainder of his prospective life, but for the defendant's act. . . . Accordingly, the trier of fact must ascertain, as nearly as can be done in advance, the difference between

the earnings that the plaintiff probably would or could have received during his life expectancy but for the harm and the earnings that he will probably be able to receive during the period of his life expectancy as now determined. In this computation, there are considered the type of work that the plaintiff has done and the type of work that, in view of his physical condition, education, experience and age, he would have been doing and will be likely to do in the future during the working period of his life, together with all other matters reasonably relevant.

Where the evidence first shows that there has been an impairment, loss, or diminution of future earning capacity, the process to ascertain compensatory damages for such loss requires (1) the determination of the extent to which such capacity has been diminished, (2) the determination of the permanency of the decrease in earning capacity, and (3) the fixing of the amount of money which will compensate for the determined extent and length of the impairment, including a reduction of the award to its present worth. The time for assessing such damages is at the time of trial. *Lake v. Southwick*, 188 Neb. 533, 198 N.W.2d 319 (1972).

There is no fixed rule for determining the amount of compensation for damages for impairment of future earning capacity, except as may be fair and reasonable under the circumstances. Such recovery for loss may be based upon such factors as the plaintiff's age, life expectancy, health, habits, occupation, talents, skill, experience, training, and industry. *Baylor v. Tyrrell, supra.*

The fourth assignment relates to the testimony and opinions of expert Dr. Jerome F. Sherman, associate professor of finance at Creighton University, which he described as a projection of Dorothy's economic loss.

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. Neb. Rev. Stat. § 27-703 (Reissue 1985).

Prior to Dr. Sherman's testimony, defendant objected to the proposed testimony based on the contents of a prior deposition of the witness and a report that he had prepared. The reasons

assigned were insufficient evidence of impairment, insufficient foundation, speculation, and no shown causal connection. The trial judge denied the objection to this anticipated evidence, noting the prior testimony of Dr. Golden on causation and observing that the evidence would assist the jury. § 27-703.

Dr. Sherman testified without further objection that he assumed Uryasz was 46 years of age, her past employment history and earnings, she managed a family pharmacy that never made a profit, and she was employed briefly as a manager at $5.75 per hour. He computed her annual income, using $5.75 per hour as a base, at $11,960, and multiplied that by 18, being her employable years to age 65, which projected $215,280 as his opinion of her future earning capacity. No factors of the extent or permanency of her impairment were considered or used. Upon cross-examination, he stated that if Uryasz went back to work and she could handle the job, she would have no loss, but if she did not return to work, the figure of $215,280 was her earning capacity.

An analysis of this testimony shows that it was subject to objection when adduced and a later motion to strike for several reasons: (1) the purpose was to give an opinion on impairment of future earning capacity, which requires the elements of a shown impairment, the extent the earning capacity has been diminished, and degree of permanency of the impairment to earning capacity, *Lake v. Southwick, supra*; (2) the witness must be shown to possess competent facts and underlying data to give such an opinion, otherwise it should not be received and is subject to being stricken, *Clearwater Corp. v. City of Lincoln*, 202 Neb. 796, 277 N.W.2d 236 (1979); (3) the only evidence in the record of the extent and degree of permanency of the impairment was speculative and indefinite, and, at most, presented a fact question for the jury, but in any event, such factors were either not considered or unknown to the witness; and (4) the witness assumed Uryasz was employable, but his opinion was in terms of total impairment, which he described as not going back to work. The result was that Dr. Sherman made a mathematical computation that was within the capabilities of a lay person, which he improperly described as impairment of future earning capacity. This produced speculation and

confusion in the evidence; however, there was no error, since defendant failed to object to the testimony when produced, waived the objection by its cross-examination, Neb. Rev. Stat. § 27-103(1)(a) (Reissue 1985), and failed to later move to strike Dr. Sherman's testimony at any time, *Priest v. McConnell*, 219 Neb. 328, 363 N.W.2d 173 (1985). The testimony became a question of weight and credibility for the jury.

In this same connection, Dr. Sherman was next permitted to testify, without objection, to the present value of $215,280, using the assumption that wages historically increase "at approximately the same rate as the return on a safe Government bond with a three- to four-year maturity," and agreed that

> the present value today of Dorothy's earnings, if she were able to work and earn for the rest of her work-life expectancy, amounts to $215,280, and . . . any interest she can earn on that money starting from today would be equivalent to what she would have received in terms of increases in wages over that same period.

He valued the present value of Uryasz' future loss of earning capacity at the same value as his opinion of future earning capacity, $215,280.

The jury instructions given by the court on present value were contrary to the procedure described by Dr. Sherman; they followed NJI 4.12 and 4.13. Since defendant's argument does not allude to this part of Dr. Sherman's testimony, it will not be further discussed.

The fifth assignment challenges the inclusion in the damages instruction, No. 14(5), as an element of damages, "The value of the loss or diminution of the power to earn in the future."

Defendant urges that the rule in *Schwab v. Allou Corp.*, 177 Neb. 342, 128 N.W.2d 835 (1964), is dispositive. In *Schwab*, plaintiff, a teacher, received injuries to one leg, diagnosed as a 10- to 15-percent permanent partial disability. When she resumed her teaching duties, the disability was an inconvenience in her work. The proof of impairment of future earning capacity failed because the disability was not related to her work performance. Plaintiff urges that the rule in *Lake v. Southwick*, 188 Neb. 533, 198 N.W.2d 319 (1972), supports her

burden of proof. In *Lake*, plaintiff, a teacher, received injuries to her lip and one leg; she resumed teaching half days; and there was no mathematical assessment of her disability. In that case, plaintiff testified that the permanent injury to her lip had healed but it caused her difficulty sometimes when speaking in the classroom, that her leg always ached after standing, and that she could not teach full time because of her leg pain. A medical doctor testified that " '[i]t would appear' " that the leg pain and fatigue plaintiff experienced after one-half day teaching " 'should continue,' " and it was difficult to say how long it would continue. *Id.* at 536, 198 N.W.2d at 321. Defendant offered no testimony on that issue. In *Lake*, the court held the evidence of the injuries, the extent thereof, their duration, and their relation to plaintiff's work performance was sufficient to submit the impairment issue to the jury.

Plaintiff urges that the work performance facts in *Siciunas v. Checker Cab Co., Inc.*, 191 Neb. 766, 217 N.W.2d 824 (1974), are applicable. We do not agree. There, the plaintiff's skills were limited to tasks requiring her to stand on her feet for prolonged periods, lift and carry objects, and lift her arms above her head, all being limited by her injury. Here, the facts show that plaintiff's skills did not limit her job opportunities and capabilities.

Summarizing the relevant evidence on this issue, plaintiff testified that she has not worked since her claimed injury; that since her discharge from the PMC she has recovered about 90 percent; that she continues to have pain and numbness in her left leg; that she was unable to return to work; that if she returned to work, she would not work in a drugstore, as she "could not stay on [her] legs that long and do a job well"; that she took classes in flower arranging; and that her work at the pharmacy included managing the store, clerking, stocking shelves, ordering supplies, cleaning, bookwork, and sales. Witness Dr. Sherman's testimony concerning plaintiff's diminution of earning capacity and its present worth was speculative and confusing to the jury. Dr. Golden testified that from the injection injury there was a residual impairment in Uryasz' leg that will continue in the future, and in performing her job functions in the future requiring her to be on her feet for

any extensive period of time, "[i]t will cause an impairment" and "will reduce her capacity in such circumstances."

The evidence, if believed, shows that plaintiff had an injury and an impairment, in some indefinite degree, to her future earning capacity; however, relating the extent and permanence of that impairment to plaintiff's job performance under this record would require the jury to indulge in speculation and uncertainties. The evidence fails to prove with reasonable certainty the impairment of plaintiff's future earning capacity. *Schwab v. Allou Corp., supra.* The giving of instruction No. 14(5) was error requiring a new trial on the issue of damages.

REVERSED AND REMANDED FOR A NEW
TRIAL ON THE ISSUE OF DAMAGES.