AUGUST J. LAGER, APPELLEE, V. JOEL L. SCHUMACHER AND DONALD SCHUMACHER, APPELLANTS.
BETTY M. LAGER, APPELLEE, V. JOEL L. SCHUMACHER AND DONALD SCHUMACHER, APPELLANTS.

510 N.W.2d 558

Filed September 7, 1993.   Nos. A-91-1263, A-91-1264.

James W. Ellison, of Holtorf, Kovarik, Ellison & Mathis, P.C., for appellants.

Robert M. Brenner, of Robert M. Brenner Law Office, for appellees.

SIEVERS, Chief Judge, and HANNON and IRWIN, Judges.

IRWIN, Judge.

## I. INTRODUCTION

These two cases, which were consolidated in this court for oral argument, involve negligence actions that arose out of the same automobile accident and were consolidated for trial. Appellees, August J. Lager and his wife, Betty M. Lager, brought separate actions against appellants, Joel L. Schumacher and Donald Schumacher, after a van operated by Joel collided with the Lagers' car. The district court for Scotts Bluff County awarded summary judgment for the Lagers on the issue of liability. After a trial on the issue of damages, a jury awarded August Lager $71,000 and Betty Lager $145,000. For the reasons set forth below, we affirm.

## II. FACTUAL BACKGROUND

On April 3, 1990, August and Betty Lager were traveling west on U.S. Highway 26 near Minatare, Nebraska, when an eastbound van driven by Joel Schumacher turned into and collided with the Lagers' vehicle. As a result of the accident, both August and Betty Lager were hospitalized for 6 days.

Betty Lager suffered head, face, neck, chest, and leg injuries. The accident left Betty Lager with facial nerve damage that causes the tissues surrounding her left eye to sag, which in turn obstructs her field of vision. Medical testimony at trial revealed that Betty Lager may require surgery to repair the nerve damage. August Lager sustained head injuries and a severe impact to his chest, which impact exacerbated an existing cardiovascular condition. Expert testimony revealed that August Lager will have lifelong health problems as a result of the accident. The Lagers also testified that the accident has had a devastating impact on their relationships with each other and with their family.

The Lagers filed separate negligence actions against appellants. Between the filing of the actions and trial, Betty Lager assigned her claim against appellants for past medical expenses to August Lager. The trial court granted summary judgment for the Lagers on the issue of liability and thereafter sustained the Lagers' motion to consolidate their respective actions for trial on the issue of damages.

Prior to trial, the Lagers filed a motion to amend their petitions to reflect the assignment of Betty's past medical expenses to August. Although a date was scheduled to hear this motion prior to trial, for purposes that are unclear from the record, the motion was not heard until after trial, whereupon it was granted. This peculiar sequence is not assigned as error by appellants.

The jury returned a verdict for Betty Lager in the amount of $145,000 and returned a verdict for August Lager in the amount of $71,000.

### III. ASSIGNMENTS OF ERROR

Appellants have made identical assignments of error in each of the cases. Appellants allege that the district court erred in (1) failing to dismiss Betty Lager's action as res judicata after she assigned her claim for past medical expenses to August Lager, (2) holding that August Lager was the real party in interest regarding Betty Lager's claim for past medical expenses, (3) consolidating the Lagers' actions for trial, and (4) not finding the jury verdicts excessive.

## IV. DISCUSSION

### 1. ASSIGNMENT OF BETTY LAGER'S PAST MEDICAL EXPENSES

In their first assignment of error, appellants claim that by assigning her claim for past medical expenses to August Lager, Betty Lager split her claim, and that her entire action is barred by the doctrine of res judicata. Appellants reason that since the jury read August Lager's verdict first, Betty Lager's entire action was thereafter barred by the doctrine of res judicata.

The Nebraska Supreme Court has stated that the doctrine of res judicata requires that

> "[a]ny right, fact, or matter in issue and directly adjudicated . . . in, the determination of an action before a competent court in which a judgment or decree is rendered . . . cannot again be litigated between the parties and privies, whether the claim or demand, purpose, or subject matter of the two suits is the same or not."

*West Town Homeowners Assn. v. Schneider*, 215 Neb. 905, 907, 341 N.W.2d 588, 590 (1983). The doctrine of res judicata is based upon the principle that a final judgment on the merits by a court of competent jurisdiction is conclusive on the parties in any later litigation involving the same cause of action. *Farmers State Bank v. Germer*, 231 Neb. 572, 437 N.W.2d 463 (1989). The underlying rationale for the doctrine of res judicata is grounded on public policy and the necessity to end litigation and the hardship imposed upon a person by being vexed twice for the same cause of action. *Id.*

Generally, where a plaintiff assigns part of her claim to another person, recovery of the assigned portion will extinguish the cause of action and bar a subsequent action for the balance of her claim. 1 Am. Jur. 2d *Actions* § 133 (1962). The reason for this result is the same as for the doctrine of res judicata, because if an assignor and an assignee are allowed to bring separate actions upon their respective portions of a claim, the defendant will be forced to litigate the claim twice. However, several jurisdictions have recognized that the application of the rule against claim splitting is subject to some flexibility, and where its application would result in manifest injustice, it is to be qualified or rejected. See, *Westwood Chemical Co., Inc. v.*

*Kulick*, 656 F.2d 1224 (6th Cir. 1981); 1A C.J.S. *Actions* § 177 (1985).

In this case, the purpose of the rule against claim splitting has been complied with. Appellants were not required to litigate the same claim on two separate occasions because appellees' respective actions were consolidated into a single proceeding.

Appellants' contention that Betty Lager's action is barred because the jury announced her verdict after August Lager's verdict is a misstatement of the law, for a judgment is not entered upon the jury's announcement of verdict. Rather, "[e]ntry of a judgment is the act of the clerk of the court in spreading the proceedings had and the relief granted or denied on the journal of the court." Neb. Rev. Stat. § 25-1301 (Reissue 1989). Judgment is not rendered until the pronouncement thereof is noted on the trial docket. *Fritch v. Fritch*, 191 Neb. 29, 213 N.W.2d 445 (1973). Although appellants' argument in this regard was flawed, we do not determine this case based on the time that judgment was entered for either August or Betty Lager.

Appellants also contend that the assignment of Betty Lager's past medical expenses claim served to inflate the amount of August Lager's verdict. Appellants reason that because the jury was instructed to consider Betty Lager's past medical expenses in with August Lager's damages, August's claim "appeared to be much larger than it actually was." Brief for appellants at 20. This argument fails because it begs the question. August Lager's claim was *in fact* larger than it would have been absent the assignment because part of his claim consisted of Betty Lager's past medical expenses. Appellants do not contend that the jury awarded damages for Betty Lager's past medical expenses to *both* August Lager and Betty. This result was adequately guarded against by the jury instruction regarding damages. The instruction directed the jury to consider Betty Lager's past medical expenses as part of August Lager's damages. The jury was also instructed on the damages that it could consider with regard to Betty Lager, and the instruction did not include her past medical expenses. Appellants did not object to the instruction and have not otherwise shown that the jury failed to follow the instruction.

Appellants cite authority from other jurisdictions holding that partial assignment of a claim bars a subsequent action where an action on a portion of the claim has already been adjudicated. However, every case cited by appellants involves two actions tried separately; hence, the defendants in those cases were being vexed twice for the same cause of action. This case is clearly distinguishable because the causes of action were consolidated for trial.

To summarize, we find that in this case the doctrine of res judicata and the rule against claim splitting were not violated by the assignment of Betty Lager's past medical expenses to August Lager because both of the claims were decided in a single proceeding and because appellants were not forced to litigate the same claim twice. Any potential prejudice to appellants arising from the assignment was adequately removed by the jury instruction regarding appellees' damages.

## 2. REAL PARTY IN INTEREST

In their second assignment of error, appellants claim that the district court erred in holding that August Lager was the real party in interest regarding Betty Lager's claim for past medical expenses. However, appellants did not raise this issue at trial. The Nebraska Supreme Court has often recognized that an issue not presented to or passed on by the trial court is not appropriate for consideration on appeal. *Wagner v. City of Omaha*, 236 Neb. 843, 464 N.W.2d 175 (1991); *Hensman v. Parsons*, 235 Neb. 872, 458 N.W.2d 199 (1990). Because the real party in interest issue was not presented to or passed on by the trial court, it is not appropriate for our consideration.

## 3. CONSOLIDATION

In their third assignment of error, appellants allege that the district court erred in consolidating appellees' cases for trial. Consolidation of cases for trial may be ordered to expedite the litigation and eliminate the multiplicity of hearings and trials, and it rests in the reviewable discretion of the trial court. *Bruno v. Kramer*, 176 Neb. 597, 126 N.W.2d 885 (1964). The court, independent of statute, has the inherent power to consolidate separate causes of action for purposes of trial. *Id.* However, this inherent power to consolidate applies only to cases that could

have been joined in the first instance. *Id.*

It is elementary that separate causes of action may not be joined in one petition unless each cause of action affects all parties to the action. See, Neb. Rev. Stat. § 25-701 (Reissue 1989) (seven situations wherein causes of action may be united in one petition); Neb. Rev. Stat. § 25-702 (Reissue 1989) (causes of action which are united per § 25-701 "must affect all the parties to the action"); *Stahmer v. Marsh*, 202 Neb. 450, 276 N.W.2d 87 (1979); *Sickler v. City of Broken Bow*, 143 Neb. 542, 10 N.W.2d 462 (1943). The action of August Lager against the Schumachers does not affect the action of Betty Lager against the Schumachers, and therefore, these causes of action were not joinable due to the requirement of § 25-702.

We note, however, that § 25-702 is out of step with modern notions of joinder adopted in other jurisdictions. Those jurisdictions allow multiple plaintiffs to join in a single proceeding actions that involve common questions of law or fact. See, e.g., Fed. R. Civ. P. 42(a); *Heller v. Production Credit of Minot*, 462 N.W.2d 125 (N.D. 1990); *James v Dixon*, 95 Mich. App. 527, 291 N.W.2d 106 (1980); *Price v. Amdal*, 256 N.W.2d 461 (Minn. 1977).

However, what has been allowed in other jurisdictions through liberal joinder rules has, in practice, been allowed in this state through assignments of claims. The Nebraska Supreme Court has permitted multiple plaintiffs to vindicate their rights against a common defendant in a single action where a plaintiff joins his own cause of action with causes of action held by other potential plaintiffs through an assignment. See *Archer v. Musick*, 147 Neb. 1018, 25 N.W.2d 908 (1947). In *Archer*, the court stated:

> The courts, when confronted with permissive joinder of causes of action, now recognize that they must exercise a wise judicial discretion and construe such statutory provisions liberally, remembering that they are remedial in nature, the dominant idea being that courts should permit the joinder of causes of action where there is some substantial unity between them. In so doing, courts should endeavor to make such statutes as effectual as possible to promote and expedite the administration of justice,

> thereby preserving economy and efficiency in courts whenever it is possible to do so without prejudice to the rights of litigants.

147 Neb. at 1030, 25 N.W.2d at 914.

In this case, consolidation promoted the economical and efficient administration of justice. Both of the Lagers' causes of action arose from the same transaction, i.e., the automobile accident. In addition, the witnesses in August Lager's cause of action were nearly identical to those in Betty Lager's cause of action. However, given our statutory scheme as set out above, the Lagers' separate causes of action were not joinable because each cause of action did not affect both plaintiffs, as required by § 25-702. The trial court, therefore, wrongfully consolidated these two cases.

Where a party has sustained the burden and expense of trial and has succeeded in securing a jury verdict on the facts in issue, he has a right to retain the benefit of that verdict unless there is prejudicial error in the proceeding in which it was secured. *Butorac v. Dixon County*, 232 Neb. 598, 441 N.W.2d 620 (1989); *Uryasz v. Archbishop Bergan Mercy Hosp.*, 230 Neb. 323, 431 N.W.2d 617 (1988). A court must disregard any error or defect in the proceedings which does not affect the substantial rights of the adverse party, and no judgment will be reversed or affected due to such error or defect. Neb. Rev. Stat. § 25-853 (Reissue 1989); *Uryasz, supra*; *Ravenna Bank v. Custom Unlimited*, 223 Neb. 540, 391 N.W.2d 557 (1986).

Of course, where trial of separate causes of action together would affect a substantial right of the defendant, justice requires that the causes be tried separately. Appellants maintain that the consolidation of appellees' actions for trial confused and prejudiced the jury, resulting in larger jury verdicts for appellees than would have resulted had the actions been tried separately. Specifically, appellants argue that because Betty Lager's injuries were more severe than August Lager's, the jury became more sympathetic toward August and awarded him more in damages than he would have received in a separate trial. The record does not support appellants' argument. The jury was instructed to consider appellees' damages separately, with the exception of Betty Lager's past medical expenses, and

to return separate verdicts. The jury awarded Betty Lager $145,000 and August Lager $71,000. The higher award to Betty Lager is consistent with the fact that her injuries were more severe than August Lager's injuries. Appellants have offered no basis for their conclusion that the consolidation of these cases resulted in higher jury verdicts.

Although the district court erred in consolidating these cases for trial, appellants have failed to show that they were prejudiced by the consolidation. We find that the district court's consolidation of these causes of action for trial was harmless error.

### 4. JURY VERDICTS

" 'A verdict will not be set aside on appeal unless it is so clearly exorbitant as to indicate that it was the result of passion, prejudice, or mistake, or it is clear that the trier of fact disregarded the evidence or rules of law.' " *Williams v. Monarch Transp.*, 238 Neb. 354, 358, 470 N.W.2d 751, 754 (1991) (quoting *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 412 N.W.2d 56 (1987)). An appellate court must sustain a verdict in a civil case if the evidence, when viewed in the light most favorable to the prevailing party, is sufficient to support the verdict. *Williams, supra*; *Rahmig, supra*.

In their claim that the jury verdicts are excessive, appellants reassert the above-mentioned arguments that consolidating the actions for trial unduly inflated the Lagers' verdicts. According to appellants, after listening to testimony regarding Betty Lager's injuries, the jury was influenced by sympathy to give August Lager a verdict much larger than it would "normally" have given.

The jury awarded August Lager $71,000. The record shows that the Lagers' past medical expenses at the date of trial were $18,823. August Lager had lost income at the time of trial totaling $11,779. August Lager may incur substantial future medical expenses due to the exacerbation of a cardiovascular condition. Betty Lager will be unable to have her vision completely restored without surgery to correct nerve damage to her face. There is also evidence that the Lagers have endured substantial pain and suffering, as well as loss of consortium. On

the basis of the evidence, we cannot conclude that either August Lager's verdict or Betty Lager's verdict resulted from passion, prejudice, or mistake. This court also cannot conclude that the verdicts were excessive. The judgments are affirmed.

AFFIRMED.