WELLS FARGO AG CREDIT CORP., A CALIFORNIA CORPORATION,
APPELLEE, V. NEAL BATTERMAN AND CLARICE BATTERMAN,
APPELLANTS.

424 N.W.2d 870

Filed June 24, 1988. No. 86-528.

Robert R. Gibson, of Professional Legal Associates of Nebraska, P.C., for appellants.

Thomas E. Johnson and Thomas O. Ashby, of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, for appellee.

HASTINGS, C.J., SHANAHAN, and FAHRNBRUCH, JJ., and RILEY and OTTE, D. JJ.

SHANAHAN, J.

Neal and Clarice Batterman appeal from the summary judgment granted by the district court for Morrill County to Wells Fargo Ag Credit Corp.

In considering a motion for summary judgment, the evidence is to be viewed most favorably to the party

against whom the motion is directed, giving him or her the benefit of all favorable inferences which may reasonably be drawn from the evidence. Summary judgment is proper when pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from material facts, and when the moving party is entitled to judgment as a matter of law. *Hoffman v. Reinke Mfg. Co.*, 227 Neb. 66, 416 N.W.2d 216 (1987); *Moseman v. L & P Investment Co.*, 226 Neb. 677, 414 N.W.2d 254 (1987); *Luschen Bldg. Assn. v. Fleming Cos.*, 226 Neb. 840, 415 N.W.2d 453 (1987).

*Stodola v. Grunwald Mechanical Contractors*, 228 Neb. 301, 303, 422 N.W.2d 341, 343 (1988). See, also, Neb. Rev. Stat. § 25-1332 (Reissue 1985).

Neal and Clarice have farmed in Morrill County for over 40 years on their "home place," a parcel consisting of 3,680 acres. In 1979, Neal and Clarice incorporated their farming operations as Batterman & Sons, Ltd., for which Neal and Clarice were the only officers and shareholders. Neal and Clarice then transferred 2,000 acres of the "home place" to Batterman & Sons, Ltd., and, as individuals, retained the remaining 1,680 acres. Also in 1979, Robert and Garold Batterman, partners in a farming operation, entered an installment land contract to purchase the Cedar Creek Ranch. To make the downpayment on the Cedar Creek Ranch and for initial operating funds, Robert and Garold borrowed from the Northwestern State Bank and gave the bank their promissory notes, which were cosigned by Neal Batterman.

Robert and Garold, as a partnership, and Batterman & Sons, Ltd., conducted separate farming operations. When income from the Cedar Creek Ranch was insufficient to pay an installment on the land contract and the partnership notes to Northwestern State Bank, Robert and Garold obtained additional loans from that bank, but only after Neal Batterman gave his guaranty in connection with the additional financing from Northwestern State Bank. When the financial condition of the Cedar Creek operations deteriorated and the Batterman

brothers did not pay the notes to the bank, Northwestern State Bank declared a default on the loans to Robert and Garold, but later extended the time for payment when Batterman & Sons, Ltd., gave the bank a mortgage to secure payment of the partnership's indebtedness. Robert and Garold tried unsuccessfully to find a purchaser for the Cedar Creek Ranch.

In the meantime, the Bridgeport State Bank, which had been providing some financing for Neal and Clarice, withheld any further financing to the couple. Another installment on the contract for purchase of the Cedar Creek Ranch came due. Northwestern State Bank commenced foreclosure on the corporate mortgage of the "home place." The combined corporate and partnership debt regarding Battermans was $2.6 million.

After contact by Robert Batterman early in 1982, Wells Fargo agreed to provide funds for the partnership and corporate operations of the Battermans by a complex financing scheme which included various forms of loans, the last of which was due in the fall of 1983. The loan and credit documents were signed by Neal Batterman, as president of Batterman & Sons, Ltd., and by Robert and Garold Batterman. The loan documents designated Batterman & Sons, Ltd., Robert Batterman, and Garold Batterman as the "borrowers," and Wells Fargo as the lender. Neal and Clarice signed a guaranty, personally guaranteeing payment of the borrowers' debt to Wells Fargo. With the exception of their guaranty, Neal and Clarice did not sign any of the documents for the financing, although Neal and Clarice gave Wells Fargo a mortgage on their land contained in the "home place," apparently in conjunction with their guaranty.

By the end of 1982, it became obvious that the loans from Wells Fargo would not be repaid on schedule. In April 1983, a new credit agreement was reached between Wells Fargo, as lender, and Batterman & Sons, Ltd., Robert Batterman, and Garold Batterman, as borrowers. This agreement contained four separate loans which were due on December 31, 1983. The agreement also required that the borrowers list the "home place" and Cedar Creek Ranch for sale.

When Wells Fargo demanded payment early in 1984, the

borrowers were unable to pay their notes. A foreclosure suit had been filed concerning the land contract for the Cedar Creek Ranch. In September 1984, Batterman & Sons., Ltd., petitioned for relief under chapter 11 of the U.S. Bankruptcy Code. Robert Batterman filed for bankruptcy in February 1986.

Wells Fargo commenced this action against Neal and Clarice Batterman, based on their individual and personal guaranties concerning the unrepaid financing from Wells Fargo. In response to Wells Fargo's petition, Neal and Clarice Batterman counterclaimed, alleging that Wells Fargo had obligated itself to provide financing for 5 years but had breached its agreement by failing to provide financing for the agreed 5-year period, and requested damages for themselves. Wells Fargo moved for summary judgment on the Battermans' counterclaim and dismissed its petition after the district court granted summary judgment to Wells Fargo.

Neal and Clarice Batterman contend that the district court erred in "failing to specify or articulate the reasons" for summary judgment and in granting summary judgment.

Neb. Rev. Stat. § 25-1127 (Reissue 1985) provides:

> Upon the trial of questions of fact by the court, it shall not be necessary for the court to state its finding, except, generally, for the plaintiff or defendant, unless one of the parties request it, with a view of excepting to the decision of the court upon the questions of law involved in the trial; in which case the court shall state in writing the conclusions of fact found separately from the conclusions of law.

Regarding the absence of specific findings by the district court, Battermans' claim of error is without merit. First, the record does not show that Battermans requested such specificity from the district court. Second, in their brief, Battermans do not discuss or describe the prejudice which may have resulted from the absence of any specific finding by the district court. The Supreme Court will not consider an assignment of error unless the claimed error is assigned and discussed in the appellant's brief. *In re Estate of West*, 226 Neb. 813, 415 N.W.2d 769 (1987); *Fee v. Fee*, 223 Neb. 128, 388

N.W.2d 122 (1986); Neb. Rev. Stat. § 25-1919 (Reissue 1985); Neb. Ct. R. of Prac. 9D(1)d (rev. 1986).

Next, Neal and Clarice Batterman claim that the district court incorrectly granted summary judgment to Wells Fargo.

On appeal, Neal and Clarice Batterman suggest that they may recover damages as third-party beneficiaries to the agreements between Wells Fargo and Batterman & Sons, Ltd. A third-party beneficiary claim was not raised by the pleadings. "The Supreme Court disposes of an appeal on the basis of the theory presented by the pleadings on which the case was tried." *Holden v. Urban*, 224 Neb. 472, 474, 398 N.W.2d 699, 701 (1987). See, also, *Foltz v. Northwestern Bell Tel. Co.*, 221 Neb. 201, 376 N.W.2d 301 (1985). Hence, we do not consider the merit of a third-party beneficiary claim by Neal and Clarice Batterman.

Among its contentions, Wells Fargo argues that Neal and Clarice Batterman lack standing to maintain the cause of action (breach of the financing agreement) asserted in their counterclaim.

Although Neal and Clarice Batterman counterclaimed for damages on account of an alleged breach by Wells Fargo in its obligation to keep the financing or credit arrangements effective for a period of 5 years, the financial arrangements involved in this case related to Wells Fargo and its borrowers, Batterman & Sons, Ltd., a corporation, and the Batterman brothers, Robert and Garold, as individuals or partners. Neal and Clarice have no legal interest in the partnership comprised of their sons. Concerning the financial or credit arrangements between Wells Fargo and Batterman & Sons, Ltd., the only interest of Neal and Clarice is that of shareholders in the corporate borrower, Batterman & Sons, Ltd.

A stockholder may not bring an action in his own name to recover for wrongs done to the corporation or its property. Such a cause of action is in the corporation and not the stockholders. The right of a stockholder to sue is derivative in its nature and can be brought only in a representative capacity for the corporation. . . .

. . . .

The general rule is that actions to enforce corporate

rights or to redress injuries to the corporation cannot be maintained by a stockholder in his own name. The injury in such instances is to the corporation and it does not give an individual right of action to a stockholder.

*Ruplinger v. Ruplinger*, 154 Neb. 394, 396-97, 48 N.W.2d 73, 75 (1951). See, also, *Henderson v. Joplin*, 191 Neb. 827, 217 N.W.2d 920 (1974); *E.K. Buck Retail Stores v. Harkert*, 157 Neb. 867, 62 N.W.2d 288 (1954); 1 W. Fletcher, Cyclopedia of the Law of Private Corporations § 36 (rev. perm. ed. 1983).

Although all shares of stock of a corporation may be owned by a small number of shareholders or by one shareholder alone, a shareholder cannot sue individually concerning rights which belong to the corporation. 1 W. Fletcher, *supra*; 12B W. Fletcher, Cyclopedia of the Law of Private Corporations § 5910 (rev. perm. ed. 1984). See, also, *Ruplinger v. Ruplinger, supra* (three stockholders); *Henderson v. Joplin, supra* (two stockholders); *Cunningham v. Kartridg Pak Co.*, 332 N.W.2d 881 (Iowa 1983). There are exceptions to the rule precluding actions by shareholders, as individuals, where the cause of action belongs to the corporation, such as a situation where a shareholder's loss is separate and distinct from that of other shareholders of the corporation or where there may be a special duty owed by a wrongdoer to a shareholder. See, *E.K. Buck Retail Stores v. Harkert, supra*; 1 W. Fletcher, *supra*. However, Battermans' counterclaim contains no allegations which exempt their claim from operation of the general rule that a shareholder may not bring an action individually to obtain relief or redress for injury to the corporation in which the shareholder owns stock. See *Ruplinger v. Ruplinger, supra*. In essence, Neal and Clarice sought to maintain an action for Wells Fargo's breach of contract with Batterman & Sons, Ltd. By itself, a shareholder's status as a guarantor for the debt of the corporation in which the shareholder owns stock does not entitle the shareholder to maintain an action against a third party for injury to the corporation. See, *Continental Ill. Nat. Bank & Trust Co. v. Stanley*, 585 F. Supp. 1385 (N.D. Ill. 1984); *Continental Group, Inc. v. Justice*, 536 F. Supp. 658 (D. Del. 1982); *Arctic Contractors, Inc. v. State*, 573 P.2d 1385 (Alaska 1978); *Siderius, Inc. v. Sriberg*, 16 Mass. App. 962, 452 N.E.2d

259 (1983).

Consequently, Neal and Clarice Batterman, as individuals and shareholders of Batterman & Sons, Ltd., lacked a legal interest standing to assert a claim against Wells Fargo for an alleged breach of the financing agreement between Wells Fargo and Batterman & Sons, Ltd. As a matter of law, Neal and Clarice Batterman were not entitled to maintain an action against Wells Fargo for its alleged breach of the financing agreement with Batterman & Sons, Ltd. Therefore, the district court correctly granted summary judgment to Wells Fargo on Battermans' counterclaim.

AFFIRMED.