**William AYRES and Douglas Pickering, Plaintiffs,**

v.

**AG PROCESSING INC, a Cooperative, George Hoover, Martin Reagan, and John Campbell, Defendants.**

**No. 03–2060–DJW.**

United States District Court, D. Kansas.

Nov. 18, 2004.

Rick D. Holtsclaw, Holtsclaw & Kendall, L.C., Kansas City, MO, Roger M. Phillips, Leawood, KS, for plaintiffs.

### MEMORANDUM AND ORDER

WAXSE, United States Magistrate Judge.

This matter is before the Court on the Motion to Dismiss (doc. 4) filed by Defendants AG Processing, Inc., George Hoover, Martin Reagan, and John Campbell. Pursuant to Fed.R.Civ.P. 12(b)(6), Defendants move to dismiss the following causes of action to the extent they allege derivative claims: breach of fiduciary duty (Count I), minority oppression (Count III), and breach of contract (Count IV). Defendants also move to dismiss Plaintiffs' tortious interference with prospective business advantage or relationship (Count II), breach of contract (Count IV), and failure to fund 401 profit sharing plan (Count V) claims in their entirety. The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, Defendants' Motion to Dismiss is granted in part and denied in part.

### I. Background Facts

Plaintiffs are minority members and former managers of a Nebraska limited liability company ("LLC"). They bring this action against the majority LLC member, Defendant corporation AG Processing, Inc., and three managers of the LLC, Defendants Reagan, Hoover, and Campbell ("Individual Defendants"). The Individual Defendants are also corporate officers of majority LLC member, Defendant AG Processing, Inc. Martin Reagan is the Chief Executive Officer, George Hoover is the Group Vice–President, and John Campbell is the Vice–President of Government Relations and Industrial Products.

On February 15, 1995, Plaintiffs, citizens of Kansas, entered into an Operating Agreement with Defendant AG Processing, Inc., a Nebraska corporation, to form a Nebraska limited liability company, AG Environmental Products, L.L.C. ("AEP LLC"). At the time AEP LLC was formed, Defendant AG Processing, Inc. owned ninety-nine percent, Plaintiff Ayres owned one-half percent, and Plaintiff Pickering owned one-half percent.

AEP LLC was formed to market methyl esters, supplied by Defendant AG Processing, Inc., as biodiesel, agrochemicals, solvents, release agents, and related industrial products. AEP LLC's principal place of business is located in Omaha, Nebraska, but it maintains offices in Johnson County, Kansas, where Plaintiffs carried out their duties as members, managers, and employees of AEP LLC.

The Operating Agreement executed by Plaintiffs and AG Processing, Inc. provides that AEP LLC will be managed by certain designated managers. Managers must either be members of AEP LLC or a member's employee. The five initial managers of AEP LLC were Plaintiffs Ayres and Pickering, Defendant John Campbell, Richard Lee, and Joseph Meyer. Of the five initial managers, Plaintiffs were nominated by themselves, with the three other initial managers nominated by the majority LLC member, Defendant AG Processing, Inc.

The Operating Agreement provides that the business and affairs of AEP LLC shall be managed by its designated managers and the managers "shall in all cases act as a group, with a majority vote or consent of the managers required to take action."[1] Each manager is entitled to hold office until he or she is removed by the member who nominated him or her, or until a successor is elected and qualified.

---

1. AEP LLC Operating Agreement, ¶ 7 (Exh. A. to Complaint).

In their positions as managers of AEP LLC, Plaintiffs were paid a salary in addition to fringe benefits. In addition, the Operating Agreement provides that each Plaintiff, as a "minority owner," could qualify for cash and unit performance bonuses. The cash bonus was contingent upon AEP LLC generating positive net earnings at the end of any fiscal year. Each Plaintiff was eligible for an equity bonus when his individual equity ownership percentage reached five percent. The equity bonus was to be equal to the cash performance bonus for any fiscal year, except that it could not exceed five percent of the total equity of AEP LLC.

The Operating Agreement executed by Plaintiffs and Defendant AG Processing, Inc. also set forth several other accounting-related provisions at issue in this case. Those provisions require that AEP LLC's net profits and losses be established through the use of generally accepted accounting principles and allocated to members in proportion to the balances in their respective capital accounts at the end of each fiscal year. The Operating Agreement also requires AEP LLC to deliver to each member, within ninety days after the expiration of each AEP LLC fiscal year, a statement of receipts and expenses prepared by the accountants chosen by the managers, together with a statement reflecting the net profits or losses of AEP LLC for such fiscal year. Finally, the Operating Agreement requires that annual member meetings be held.

At some point, Plaintiffs became concerned about certain actions taken by Defendants, including, *inter alia*, investing in unsecured business investments, using AEP LLC funds for political lobbying, manipulating funds from USDA Commodity Credit Corporation between fiscal accounting years to decrease AEP LLC's profits for 2003, failing to hold annual meetings, failing to provide year-end financial disclosures timely, and failing to distribute equity bonuses to Plaintiffs. Plaintiffs allege that they protested these actions and demanded that the Operating Agreement requirements be followed and that the unrelated business activities cease. Defendants' response to Plaintiffs' demand was to terminate Plaintiffs as managers, employees, and members of AEP LLC on October 28, 2003.

On February 17, 2004, Plaintiffs filed the current diversity action alleging damages for breach of fiduciary duty, tortious interference with prospective business advantage or relationship, minority oppression, breach of contract, and failure to fund 401 profit sharing plan. Defendants responded by moving to dismiss Plaintiffs' claims either to the extent that they allege derivative claims or in their entirety.

## II. Standard for Ruling on a Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss will be granted only if it appears beyond a doubt that the plaintiff is unable to prove any set of facts entitling him to relief under his theory of recovery,[2] or when an issue of law is dispositive.[3] Dismissal is a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interests of justice.[4]

In ruling on a motion to dismiss, the court accepts as true all well-pleaded facts,

---

**2.** *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1303 (10th Cir.1998).

**3.** *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

**4.** *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir.1989).

as distinguished from conclusory allegations,[5] and all reasonable inferences from those facts must be viewed in favor of the non-moving party.[6] Although not required to precisely state each and every element of his claim, a plaintiff must at least advance minimal factual allegations on the material elements of his claim to survive a Rule 12(b)(6) motion to dismiss.[7] The ultimate issue in reviewing the sufficiency of a complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims.[8] Notwithstanding these deferential rules, the court is not allowed to assume that a plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." [9]

## III. Discussion and Analysis

### A. Breach of Fiduciary Duty and Minority Oppression Claims

In Counts I and III of their Complaint, Plaintiffs claim that Defendants (1) breached the fiduciary duty they owe to Plaintiffs, and (2) Defendant AG Processing, Inc., as majority member of AEP LLC, oppressed Plaintiffs as minority members by wrongfully terminating Plaintiffs as managers, employees, and members of AEP LLC, despite the financial and operational advantages they provided to AEP LLC. Plaintiffs also allege that Defendants engaged in conduct that adversely affected AEP LLC's profits and assets for the benefit of the profits and assets of Defendant AG Processing Inc. More specifically, Plaintiffs assert Defendants caused AEP LLC to invest in risky, unsecured business investments, used AEP LLC funds for political lobbying, and manipulated funds from USDA Commodity Credit Corporation between fiscal accounting years so as to decrease AEP LLC's profits for 2003. Finally, Plaintiffs claim that Defendants breached their fiduciary duty by failing to hold annual meetings, failing to use generally accepted accounting principles, failing to provide the required financial disclosures to Plaintiffs within ninety days of the close of fiscal year 2003, and failing to distribute equity bonuses to Plaintiffs, all required by AEP LLC's Operating Agreement.

#### 1. Choice of law

Before addressing the substantive issues, the Court must first determine what law governs Plaintiffs' breach of fiduciary duty and minority oppression claims. The parties disagree as to whether Nebraska or Kansas law governs these claims. They also disagree on which state's law governs whether Plaintiffs may assert their breach of fiduciary duty and minority oppression claims derivatively or whether they may assert these claims directly, which impacts whether Plaintiffs must comply with the Fed.R.Civ.P. 23.1 procedural requirements for derivative actions.

A federal court exercising diversity jurisdiction applies the choice of law rules from the state in which the court sits.[10]

---

**5.** *Maher*, 144 F.3d at 1304; *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984).

**6.** *Witt v. Roadway Express*, 136 F.3d 1424, 1428 (10th Cir.1998).

**7.** *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991).

**8.** *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on*

*other grounds* by *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

**9.** *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

**10.** *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

Thus, the Court must look to Kansas law to determine which state's laws apply to Plaintiffs' breach of fiduciary duty and minority oppression claims.

Kansas has a statutory choice of law provision governing foreign limited liability companies, which is set forth in the Kansas Revised Limited Liability Company Act.[11] K.S.A. 17–76,120(a)(1) provides that:

> Subject to the constitution of the state of Kansas: The laws of the state, territory, possession, or other jurisdiction or country under which a foreign limited liability company is organized to [sic] govern its organization and internal affairs and the liability of its members and managers.[12]

■ Kansas' choice of law statute for foreign LLCs does not define the term "internal affairs." The statute also does not specify whether "the liability of [the LLC's] member and managers" refers to their liability to outsiders, such as creditors, or customers, or to their liability to the members of the LLC. Nor does the statute identify the causes of action that are to be governed by the law of the state where the foreign LLC is organized. Applying a plain meaning interpretation of the statute, the Court determines that a breach of fiduciary duty cause of action asserted by minority LLC members against the majority LLC member and the LLC's managers would involve the internal affairs of the LLC. Claims of breach of fiduciary duty would require the Court to also examine the liability of the LLC's members and managers to other members of the LLC based upon those alleged breaches. One commentator on LLCs, drawing from the corporate analogy, has specifically suggested that issues such as the fiduciary standards and the responsibilities of managers and majority members owed to the LLC entity and its member owners should be included within the purview of the state LLC statutes.[13] The Court therefore holds that a LLC member's breach of fiduciary duty claims against another LLC member and against the managers of the LLC would fall within the scope of K.S.A. 17–76,120(a)(1). For these reasons, the Court holds that Kansas' choice of law statute for foreign LLCs, K.S.A. 17–76,120(a)(1), applies to Plaintiffs' breach of fiduciary duty claims.

The Court also holds that Plaintiffs' minority oppression claim against Defendant AG Processing, Inc. falls within the purview of the statute. Claims of minority oppression usually arise from internal disputes among members of a business entity regarding its operation and management. Although courts differ in their approaches as to what constitutes "oppressive conduct," such conduct usually occurs where the majority shareholder engages in a series of otherwise legal acts, which effectively prevent the non-controlling shareholder from participating in the operation and management of the corporation.[14]

In this case, Plaintiffs' minority oppression allegations relate to Defendant AG Processing, Inc.'s internal conduct in managing and operating AEP LLC. Because Defendant AG Processing, Inc.'s allegedly oppressive conduct toward Plaintiffs involves the internal affairs of AEP LLC,

---

11. K.S.A. 17–7662 through 17–76,140 (Supp. 2003).

12. K.S.A. 17–76,120(a)(1) (Supp.2003).

13. P. John Kozyris, The Conflict–of–Laws Aspects of the New American Business Entity: the Limited Liability Company, 43 Am. J. Comp. L. 417, 423 (1995).

14. *McCauley v. Tom McCauley & Son, Inc.,* 104 N.M. 523, 724 P.2d 232, 236–37 (1986) (citing *Gidwitz v. Lanzit Corrugated Box Co.,* 20 Ill.2d 208, 170 N.E.2d 131 (1960); *White v. Perkins,* 213 Va. 129, 189 S.E.2d 315 (1972)).

this cause of action would fall within the scope of K.S.A. 17–76,120(a)(1). The Court therefore holds that K.S.A. 17–76,-120(a)(1) applies to Plaintiffs' minority oppression claim against Defendant AG Processing, Inc.

Applying K.S.A. 17–76,120(a)(1) to the case at bar, the Court determines that the law of the state under which AEP LLC is organized, i.e., Nebraska, governs the breach of fiduciary duty and minority oppression claims that Plaintiffs, as minority AEP LLC members, have asserted against the majority AEP LLC member and three of AEP LLC's managers. The Court will therefore apply Nebraska law to determine whether Plaintiffs are required to bring their breach of fiduciary duty and minority oppression claims derivatively or whether they may assert them directly.

### 2. Under Nebraska law, may Plaintiffs assert claims for breach of fiduciary duty and minority oppression directly or must they be asserted derivatively?

■ Defendants move to dismiss Plaintiffs' breach of fiduciary duty and minority oppression claims to the extent these causes of action allege derivative claims. Defendants contend that Plaintiffs may not assert such claims as an individual or direct action but must assert them as a derivative action. Plaintiffs must then meet all of the procedural requirements for pleading a derivative action, as set forth in Federal Rule of Civil Procedure 23.1.[15] Defendants contend that Plaintiffs have not complied with the procedural pleading requirements of Rule 23.1, and therefore their breach of fiduciary duty and minority oppression claims, which they are required to assert as derivative claims, must be dismissed.

In their Complaint, Plaintiffs do not assert their breach of fiduciary or minority oppression claims as derivative actions. Instead, they assert them as a direct action. They argue that the special pleading requirements of Rule 23.1 are not applicable to their claims because they are not precluded from asserting their claims as a direct action under the close corporation exception to the rule that shareholder actions be brought as a derivative claim.

As cited by Defendants, the courts of Nebraska have established the general rule that a corporate shareholder may not bring an action in his or her own name to recover for wrongs done to the corporation or its property.[16] According to these Nebraska cases, the cause of action belongs to the corporation and not to the shareholders,[17] as such the right of a sharehold-

---

**15.** To bring a derivative claim, plaintiffs must comply with Fed.R.Civ.P. 23.1, which provides, in part:

In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains or that the plaintiff's share or membership thereafter devolved on the plaintiff by operation of law, and (2) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.... The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort. Fed. R.Civ.P. 23.1.

**16.** *Meyerson v. Coopers & Lybrand,* 233 Neb. 758, 448 N.W.2d 129, 133 (1989); *Wells Fargo Ag Credit Corp. v. Batterman,* 229 Neb. 15, 424 N.W.2d 870 (1988).

**17.** *Meyerson,* 448 N.W.2d at 133 (Neb.1989).

er to sue is derivative in nature and must be brought only in a representative capacity for the corporation.[18] This is true even though all of the shares of corporate stock are owned by a small number of shareholders or by one shareholder alone.[19]

Defendants contend that this rule prohibiting a corporate shareholder from asserting an individual action should also apply to members of a LLC. Defendants argue that because Nebraska law permits a LLC, like a corporation, to sue, be sued, complain, and defend in its name, Plaintiffs' right to sue, as members of AEP LLC, is derivative in nature and therefore should only be exercised in a representative capacity on behalf of the LLC.

Although the Court does not dispute that Defendants have correctly recited Nebraska law in the context of a corporate shareholder, the Court is not convinced that this law should apply to members of a LLC. Defendants have failed to cite, and the Court has been unable to locate, any Nebraska case addressing whether the rule that a corporate shareholder may not bring an action in his or her own name to recover for wrongs done to the corporation or its property should apply to members of a LLC. Nor have Defendants cited any Nebraska law requiring a minority LLC member to assert breach of fiduciary duty or minority oppression claims as a derivative action, or prohibiting a minority LLC member from asserting direct claims against other LLC members. In the absence of any such law, the Court declines to speculate whether the courts of Nebraska would apply the corporate law prohibiting a shareholder from suing individually for rights that belong to the corporation to the facts of this case, where the minority members of a closely-held LLC are asserting claims against the majority LLC member and the LLC's managers.

For purposes of this case, however, the Court need not speculate because, even if Nebraska's corporate law rule disallowing direct shareholder actions is found to also apply to LLCs, the Nebraska Supreme Court has expressly recognized that "there are exceptions to the rule precluding actions by shareholders, as individuals, where the cause of action belongs to the corporation, such as a situation where a shareholder's loss is separate and distinct from that of other shareholders of the corporation or where there may be a special duty owed by a wrongdoer to a shareholder."[20] Under this exception, the shareholder may assert an individual action if the shareholder alleges that the harm to the corporation also damaged the shareholder in his or her individual capacity.[21] Therefore, to be eligible for the exception under Nebraska law, the shareholder must demonstrate either that (1) there is a special duty, such as a contractual duty, between the wrongdoer and the shareholder, or (2) the shareholder suffered an injury separate and distinct from that suffered by other shareholders.[22]

Defendants contend that Plaintiffs do not fall within this exception because Plaintiffs have not alleged any injury unique and distinct to themselves as individuals. Defendants argue that Plaintiffs' allegations of lost profits and financial mismanagement are both derivative in nature.

---

18. *Wells Fargo Ag Credit,* 424 N.W.2d at 874; *Henderson v. Joplin,* 191 Neb. 827, 217 N.W.2d 920, 925 (1974); *E.K. Buck Retail Stores v. Harkert,* 157 Neb. 867, 62 N.W.2d 288, 305 (1954).

19. *Meyerson,* 448 N.W.2d at 135 (citing *Wells Fargo Ag Credit,* 424 N.W.2d at 874).

20. *Wells Fargo Ag Credit,* 424 N.W.2d at 874.

21. *Meyerson,* 448 N.W.2d at 133.

22. *Id.*

Defendants further assert that Plaintiffs have not alleged any facts showing a special duty owed to them as individuals.

The Court finds that Plaintiffs have alleged sufficient facts to state a claim under the exception recognized by Nebraska law. Plaintiffs allege that they have been damaged in their individual capacities by the termination of their status as employees, managers, and members of the LLC and by Defendants' failure to pay the equity bonuses they claim they were entitled to receive under the terms of the AEP LLC Operating Agreement, a contract between them and Defendant AG Processing, Inc. Plaintiffs also allege that Defendants' actions in failing to distribute equity bonuses, as directed by the AEP LLC Operating Agreement, resulted in a loss of their equity ownership in AEP LLC and a decrease in financial benefits to them.

Because Plaintiffs have alleged that Defendants' actions resulted in damages in the form of a loss to their equity ownership in AEP LLC and a decrease in financial benefits to them, the Court finds that Plaintiffs have alleged an injury separate and distinct from that suffered by other members of the LLC. Given these allegations of individual harm, Plaintiffs' claims fall under the exception recognized under Nebraska law that allows an individual action by a corporate shareholder. Plaintiffs may therefore assert their breach of fiduciary duty and minority oppression claims as a direct action. As they may bring these causes of action directly, they are not required to comply with the requirements for derivative actions set forth in Federal Rule of Civil Procedure 23.1.

Accordingly, Defendants' Motion to Dismiss Plaintiffs' Breach of Fiduciary Duty (Count I) and Minority Oppression (Count III) claims to—the extent they allege derivative claims—is denied.

## B. Tortious Interference Claims Against Defendant Reagan

In Count II of their Complaint, Plaintiffs assert tortious interference claims against Defendant Reagan. Although Count II is captioned a claim for "tortious interference with prospective business advantage or relationship," Plaintiffs appear to also assert a claim against Defendant Reagan for tortious interference with a contract. Plaintiffs allege that Defendant Reagan intentionally, without justification, and without any legitimate business purpose, exercised improper pressure and influence on the decision-making processes of AEP LLC's managers and procured the breach of the Operating Agreement. Defendants move to dismiss the tortious interference claims against Defendant Reagan on the basis that Plaintiffs have failed to state a claim.

### 1. Choice of law

The parties agree that Kansas substantive law governs these claims. The Court concurs. Because Plaintiffs' claims sound in tort, the Court must look to Kansas' general tort conflicts rule to determine what substantive law governs.[23] Kansas' foreign LLC choice of law statute, K.S.A. 17–76,120, which focuses on the internal affairs of the LLC and the liability of members and managers of the LLC, would not apply to Plaintiffs' tortious interference claims because these claims do not relate to the "internal affairs" of a foreign LLC or the "liability of its members and managers." [24]

Kansas' general tort conflict of law rule is set forth in *Ling v. Jan's Liquors*,[25]

**23.** *See Altrutech, Inc. v. Hooper Holmes, Inc.,* 6 F.Supp.2d 1269, 1276 (D.Kan.1998).

**24.** K.S.A. 17–76,120(a)(1).

**25.** 237 Kan. 629, 634–35, 703 P.2d 731, 735 (1985).

wherein the Kansas Supreme Court held that the law of the state where the tort occurs controls. Under this rule, the tort is deemed to have occurred where the wrong was felt.[26] In the case of alleged financial harm, as is the case here, the court looks to the state in which the plaintiff felt the financial harm.[27] Because the wrong in this case is the financial harm Plaintiffs claim to have suffered as a result of Defendants' alleged conduct, the Court must determine where Plaintiffs felt this financial injury in order to determine where the tort is deemed to have occurred. Plaintiffs reside in Kansas and were employed at AEP LLC's Johnson County, Kansas office when they experienced their alleged injuries. Therefore, the Court concludes that Kansas law governs whether Plaintiffs have stated a claim for tortious interference against Defendant Reagan.

### 2. Elements of each tortious inference claim

■ Kansas recognizes both tortious interference with contract and tortious interference with prospective business advantage or relationship.[28] Tortious interference with contract is intended to protect existing relationships, while tortious interference with prospective business advantage or relationship is intended to protect future or potential contractual business relationships.[29] Although the elements of each tort are similar, they are not identical. The elements essential to recovery for tortious interference with an existing contract are: (1) the contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom.[30]

■ In comparison, the elements of tortious interference with prospective business advantage or relationship are: (1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by defendant; and (5) damages suffered by plaintiff as a direct or proximate cause of defendant's misconduct.[31] Both tortious interference with a contract and tortious interference with contractual expectations or a prospective business advantage are predicated on malicious conduct by the defendant.[32]

### 3. Defendants' arguments for dismissal

Defendants advance several arguments in support of their motion to dismiss Plaintiffs' claims for tortious interference against Defendant Reagan. Specifically, they argue that Plaintiffs have failed to state a claim for tortious interference with contract because Plaintiffs have not alleged that a contracting party, AG Processing, Inc., breached the Operating Agreement. In addition, they argue that Plaintiffs' claim for tortious interference

**26.** *Id.*

**27.** *Bushnell Corp. v. ITT Corp.*, 973 F.Supp. 1276, 1286 (D.Kan.1997); *Altrutech*, 6 F.Supp.2d at 1276.

**28.** *See Turner v. Halliburton Co.*, 240 Kan. 1, 12, 722 P.2d 1106 (1986).

**29.** *Id.*

**30.** *Burcham v. Unison Bancorp, Inc.*, 276 Kan. 393, 423, 77 P.3d 130, 150 (2003) (citing *Dickens v. Snodgrass, Dunlap & Co.*, 255 Kan. 164, 168–69, 872 P.2d 252, 257 (1994)); *Turner v. Halliburton Co.*, 240 Kan. 1, 12, 722 P.2d 1106, 1115 (1986).

**31.** *Burcham*, 276 Kan. at 424, 77 P.3d at 151.

**32.** *Id.*, 276 Kan. at 424–25, 77 P.3d at 151.

with prospective business advantage or relationship against Defendant Reagan must be dismissed because (1) Plaintiffs were at-will employees of AEP LLC, and, as such, their prospective business relationship was not reasonably certain, and (2) Plaintiffs have not alleged any independently actionable conduct by Defendant Reagan. Finally, Defendants argue that even if Defendant Reagan interfered with the Operating Agreement or a prospective business relationship, his conduct was privileged. The Court will address each argument in turn.

### a. Whether Plaintiffs must allege that the AEP LLC Operating Agreement was breached by a party to the Agreement

■ Defendants first argue that Plaintiffs have failed to state a claim for tortious interference with contract because they have not alleged that Defendant AG Processing, Inc. breached the AEP LLC Operating Agreement. They point to paragraph 42 of the Complaint, which alleges that Defendant Reagan "procured *AEP's* breach of its Operating Agreement with Plaintiffs."[33] They argue that AEP LLC was not a party to the Operating Agreement and thus could not have breached the contract.

Based upon a review of the Complaint, the Court finds that Plaintiffs have alleged all of the elements for tortious interference with contract: (1) the existence of a contract between Plaintiffs and AG Processing, Inc.;[34] (2) Defendant Reagan's knowledge thereof;[35] (3) his intentional procurement of its breach;[36] (4) the absence of justification;[37] and (5) resulting

damage to Plaintiffs.[38] The fact that Plaintiffs alleged that AEP LLC breached the Operating Agreement rather than AG Processing, Inc. is immaterial. Throughout the Complaint, Plaintiffs refer to Defendant AG Processing, Inc. as being a party to the Operating Agreement that created and formed AEP LLC.[39] The Court therefore determines that Plaintiffs have adequately stated a claim for tortious interference with contract against Defendant Reagan.

### b. Whether Plaintiffs, as at-will employees, can state a claim for tortious interference with prospective business advantage or relationship

■ Defendants next argue that Plaintiffs' claim for tortious interference with prospective business advantage or relationship against Defendant Reagan must be dismissed because Plaintiffs were at-will employees of AEP LLC, and, as such, their prospective business relationship was not reasonably certain. Because Plaintiffs were at-will employees of AEP LLC, Defendants argue that, as a matter of Kansas law, Plaintiffs cannot assert that they were reasonably certain to gain future economic benefit through their continued employment by AEP LLC. Defendants further argue that Plaintiffs' status as minority shareholders does not alter the at-will employment relationship and courts have routinely upheld the termination of at-will employees, without cause, even if the employees are minority shareholders.

Defendants cite a number of cases in support of their argument that Plaintiffs, as at-will employees, cannot assert that

---

33. Complaint ¶ 42 (emphasis added).

34. Complaint ¶ 36.

35. Complaint ¶ 40.

36. Complaint ¶ 42.

37. Complaint ¶ 42.

38. Complaint ¶ 43.

39. Complaint ¶¶ 15, 36.

they were reasonably certain to gain future economic benefits from their continued employment.[40] They argue that in those cases courts have repeatedly rejected tortious interference claims, where an at-will employee asserts that the defendant interfered with his future employment prospects.

Although Defendants cite a number of cases that have purportedly rejected tortious interference claims by at-will employees, the Court notes that all but one of the cited cases involved claims for tortious interference with contract, not interference with prospective business advantage or relationship. Only one of the cases cited by Defendants, *Babbar v. Ebadi*,[41] addressed a claim for tortious interference with prospective business relationships. In *Babbar*, however, the Court, in ruling on a motion for summary judgment, found there was *no evidence to show* that the plaintiff was reasonably certain to have realized his subjective expectation of receiving tenure.[42] Contrary to Defendants' contention, *Babbar* did not hold as a matter of law that at-will employees can never assert that they are reasonably certain of future economic benefit through continued employment.

Furthermore, the Court disagrees with Defendants' asserted conclusion that Plaintiffs were at-will employees. While Plaintiffs' Complaint does not specifically allege that Plaintiffs had an employment contract with AEP LLC, the Complaint does contain sufficient allegations to raise this as an issue. Plaintiffs allege that the AEP LLC Operating Agreement provides that each AEP LLC manager shall hold office until removed by the member who nominated him, or until his successor is elected and qualified. Plaintiffs further allege that the AEP LLC Operating Agreement names them as initial managers of AEP LLC. These allegations sufficiently raise the factual issue of whether Plaintiffs were at-will employees. Accepting as true all well-pleaded facts and viewing all reasonable inferences in favor of Plaintiffs, the Court cannot summarily conclude, as Defendants contend, that Plaintiffs were at-will employees.

To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs must plead all of the required elements for tortious interference with prospective business advantage or relationship. Here, Plaintiffs have sufficiently pled all of the required elements to assert a claim for tortious interference with prospective business advantage or relationship: (1) Plaintiffs agreed to serve as managers, employees, and members of AEP LLC and were reasonably certain to gain future economic benefit through their continued employment by AEP LLC;[43]

---

**40.** *See e.g., Mart v. Dr. Pepper Co.,* 923 F.Supp. 1380, 1390 (D.Kan.1996) (refusing even to recognize a contract); *Lorimor v. Boeing Wichita Employees' Credit Union,* 1994 WL 240774, *7 (D.Kan.1994) (refusing even to recognize a contract); *Johnson v. Wefald,* 766 F.Supp. 977, 984 (D.Kan.1991) (because plaintiff was an employee-at-will and had no employment contract, he could not maintain a cause of action for tortious interference with such a contract); *Rodriguez v. ECRI Shared Servs.,* 984 F.Supp. 1363, 1367 (D.Kan.1997) (rejecting tortious interference claim where party terminated contract according to provisions expressly included in the contract); *Randolph v. Board of Public*

*Utilities,* 983 F.Supp. 1008, 1017 (D.Kan. 1997) (rejecting tortious interference in employment-at-will context because "an employment at will contract is not breached by termination"); *Babbar v. Ebadi,* 36 F.Supp.2d 1269, 1276 (D.Kan.1998) (untenured teacher could not show his "prospective business advantage" was reasonably certain in a claim for tortious interference with prospective relationship).

**41.** 36 F.Supp.2d 1269, 1276 (D.Kan.1998).

**42.** *Id.* at 1276 (emphasis added).

**43.** Complaint ¶¶ 37–39.

(2) Defendant Reagan was aware of the Operating Agreement of AEP LLC;[44] (3) but for the conduct of Defendant Reagan, Plaintiffs were reasonably certain to have continued as managers, employees and members of AEP LLC;[45] (4) Defendant Reagan acted intentionally, without justification, and without any legitimate business purpose;[46] and (5) Plaintiffs suffered damages as a direct result of Defendant Reagan's misconduct.[47] Further, Defendants have not shown beyond a doubt that Plaintiffs are unable to prove any set of facts entitling them to relief under this theory of recovery, or that as a matter of law Plaintiffs cannot assert that they have a reasonable certainty of gaining future economic benefit through their continued employment by AEP LLC. Defendants' Motion to Dismiss Plaintiffs' tortious interference with prospective business advantage or relationship on the grounds that Plaintiffs were at-will employees because their prospective business relationship was not reasonably certain is therefore denied.

### c. Whether Plaintiffs must allege that Defendant Reagan engaged in independently actionable conduct

Defendants next argue that Plaintiffs cannot state a claim for tortious interference with prospective business advantage or relationship because they have not alleged any independently actionable conduct by Defendant Reagan. Defendants cite a Tenth circuit case, *DP–Tek, Inc., v. AT & T Global Info. Solutions Co.,*[48] in support of their argument that a plaintiff must show that the defendant employed a wrongful means to interfere with future business, and that this wrongful means was independently actionable conduct. Plaintiffs maintain that *DP–Tek* is easily distinguishable in that it involved issues arising from business competitors claiming interference with prospective business relationships.

The Court agrees with Plaintiffs that *DP–Tek* is distinguishable from this case. Significantly, the court in *DP–Tek* relies upon section 768 of the Restatement Second of Torts,[49] which sets forth the factors a court should consider in deciding whether a business competitor's interference is improper. The Tenth Circuit held that the Kansas Supreme Court would adopt section 768 of the Restatement Second of Torts, and that in a claim for interference with a prospective contract by a business competitor, the "wrongful means" element of Restatement section 768 requires independently actionable conduct.[50]

In this case, there is no allegation that Defendant Reagan is a business competitor to Plaintiffs. In fact, as Plaintiffs point out, Plaintiffs and Defendant Reagan were members and managers of the same LLC, purportedly working toward the same

---

44. Complaint ¶ 40.

45. Complaint ¶ 41.

46. Complaint ¶ 42.

47. Complaint ¶ 43.

48. 100 F.3d 828, 833 (10th Cir.1996).

49. Section 768 of Restatement Second of Torts provides:

One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if

(a) the relation concerns a matter involved in the competition between the actor and the other and

(b) the actor does not employ wrongful means and

(c) his action does not create or continue an unlawful restraint of trade and

(d) his purpose is at least in part to advance his interest in competing with the other.

50. *Id.*

goals. Therefore, the competitor privilege set out in section 768 of Restatement Second of Torts is not applicable to Plaintiffs' claim for tortious interference with prospective business relations in this case. Plaintiffs need not allege independently actionable conduct by Defendant Reagan in their claim for tortious interference with business advantage or relationship.

Moreover, even if Defendant Reagan had asserted a competitor's privilege to interfere with Plaintiffs' relationship with AEP LLC and the other managers, Plaintiffs' claim that Defendant Reagan breached his fiduciary duty may serve as the independently actionable conduct required under the privilege.[51] Accordingly, Defendants' motion to dismiss Plaintiffs' tortious interference with prospective business advantage or relationship claim to the extent that Plaintiffs have failed to allege any independently actionable conduct by Defendant Reagan is denied.

### d. Whether Defendant Reagan's conduct was privileged

■ Defendants next argue that Defendant Reagan's conduct was privileged and cannot give rise to a claim for tortious interference with contract or prospective business advantage or relationship. They argue that Plaintiffs' allegations that Defendant Reagan attempted to influence the decision-making processes of other managers and that this pressure and influence was "improper" are insufficient to state a claim because Plaintiffs fail to set out a single fact showing the impropriety of Defendant Reagan's alleged conduct. Defen-

dants assert that Plaintiffs do not plead a single allegation that Reagan's means of "influence" was somehow wrongful or that Reagan's conduct was self-interested. Thus, Defendants argue that Reagan's alleged conduct was privileged under Kansas law and that Plaintiffs cannot state a claim against him for tortious interference.

In Kansas, a party, who without legal privilege to do so, intentionally causes a third person not to perform a contract with another may be held liable for tortious interference with that contract.[52] But "not all interference in present or future contractual relations is tortious. A person may be privileged or justified to interfere with contractual relations in certain situations."[53] This principle of law is encompassed within the fourth element required for a plaintiff to state a claim for tortious interference with contract — "absence of justification."[54]

Paragraph 42 of Plaintiffs' Complaint alleges that "Defendant Reagan intentionally, without justification, and without any legitimate business purpose, through Defendants Hoover and Campbell, exercised improper pressure and influence on the decision making processes of the Managers and procured AEP's breach of its Operating Agreement with Plaintiffs." The Court finds these allegations sufficient to plead the fourth element of tortious inference with contract, i.e., that Defendant Reagan acted "without justification." Whether Defendant Reagan actually acted without justification or privilege is a factual question. Viewing all reasonable inferences that can be drawn from the Com-

---

**51.** See DP–Tek, Inc. v. AT & T Global Info. Solutions Co., 891 F.Supp. 1510, 1522–23 (D.Kan.1995) (Lungstrum, J.) (breach of fiduciary duty may serve as the wrongful means to sustain a tortious interference claim), aff'd, 100 F.3d 828 (10th Cir.1996), but later disagreed with by L & M Enters., Inc. v. BEI Sensors & Sys. Co., 231 F.3d 1284, 1288 (10th Cir.2000).

**52.** Id.

**53.** Turner, 240 Kan. at 12, 722 P.2d at 1115 (citing May v. Santa Fe Trail Transp. Co., 189 Kan. 419, 424–25, 370 P.2d 390, 395 (1962); Restatement (Second) of Torts § 767).

**54.** Burcham, 276 Kan. at 423, 77 P.3d at 150.

plaint as true and viewed in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have pled the lack of privilege or justification sufficient to survive a Rule 12(b)(6) motion to dismiss.

For these reasons, Defendants' Motion to Dismiss Plaintiffs' tortious interference claims against Defendant Reagan (Count II) is denied.

## C. Breach of Contract Claim

In Count IV of their Complaint, Plaintiffs allege that Defendants Reagan, Hoover, and Campbell, as members and managers of AEP LLC, had a duty to abide by the terms of the AEP LLC Operating Agreement. Plaintiffs further claim that these Individual Defendants interfered with and breached the AEP LLC Operating Agreement by exceeding the scope of their authority.

### 1. Choice of law

The parties agree that the AEP LLC Operating Agreement's choice of law provision provides that the Operating Agreement and the rights of the members thereunder are to be construed and interpreted under the laws of the state of Nebraska. They also agree that the AEP LLC Operating Agreement choice of law provision, designating Nebraska law, governs Plaintiffs' breach of contract claims. The Court determines that the forum selected by the choice of law provision bears a reasonable relation to the Operating Agreement.[55] The Court will therefore apply Nebraska law to determine whether Plaintiffs may assert a breach of contract claim against Individual Defendants Reagan, Hoover, and Campbell.

### 2. Whether Plaintiffs may assert a claim for breach of contract against non-parties to that contract

██ Defendants move to dismiss Plaintiffs' breach of contract claim against the Individual Defendants on the ground that these Defendants are not a party to the AEP LLC Operating Agreement. In response, Plaintiffs argue that, as a matter of public policy, LLC managers and members who breach the LLC's Articles of Organization and/or the Operating Agreement should be held liable for those breaches under a breach of contract cause of action.

One of the established principles of contract law is that, absent an exception, "a contract cannot bind a nonparty."[56] Generally, a contract binds no one but the parties to it, and an action on a contract cannot be maintained against a person who is not a party to the contract.[57] Therefore, absent some showing by the plaintiff of an exception to this requirement, privity is required for breach of contract claims.[58]

---

**55.** See Griffin v. Bank of America, 971 F.Supp. 492, 496 (D.Kan.1997) ("Under Kansas law, the enforceability of a contractual choice-of-law provision turns on whether the forum selected bears a reasonable relation to the contract at issue.").

**56.** EEOC v. Waffle House, Inc., 534 U.S. 279, 294, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002).

**57.** 17B C.J.S. Contracts § 630 (1999); see also 17A Am.Jur.2d Contracts § 412 (2004) ("Generally, the obligation of contracts is limited to the parties making them, and, ordinarily, only those who are parties to contracts are liable for their breach.").

**58.** See also Copiers Typewriters Calculators, Inc. v. Toshiba Corp., 576 F.Supp. 312, 322 (D.Md.1983) ("Absent some recognized exception, it is hornbook law that only the parties to a contract can enforce it and that they may enforce it against only the parties to the contract"); Norris v. Hous. Auth. of City of Galveston, 980 F.Supp. 885, 892 (S.D.Tex. 1997) ("[I]t is an elementary rule of law that privity of contract is an essential element of recovery in an action based on a contractual theory.").

Here, Plaintiffs and AG Processing, Inc. are the only original contracting parties to the AEP LLC Operating Agreement. Plaintiffs, however, do not assert their breach of contract claim against AG Processing, Inc. Instead, they assert their claim against the Individual Defendants in their capacities as members and managers of AEP LLC.

The Court notes that although Plaintiffs are purportedly suing the Individual Defendants in their capacities as members of AEP LLC, Plaintiffs have not alleged that the Individual Defendants ever became members of the LLC under the Operating Agreement's provision for the addition of new LLC members. By all indications in the Complaint and the parties' briefing, Plaintiffs appear to be asserting these claims against the Individual Defendants in their capacities as executive officers of LLC member, corporation AG Processing, Inc., rather than as LLC members themselves. As corporate officers of LLC member AG Processing, Inc., the Individual Defendants would not be liable for breach of the Operating Agreement unless they purported to bind themselves to the contract.[59] Plaintiffs have made no such allegation. Under the facts alleged, the Individual Defendants would not be liable in their capacities as officers of LLC member AG Processing, Inc.

Plaintiffs are also purportedly suing the Individual Defendants in their capacities as managers of the LLC. The Complaint is not clear as to the specific time period during which the Individual Defendants served as managers of AEP LLC. Even if the Court were to find that the Individual Defendants were managers at the time of the alleged breaches of the Operating Agreement, Plaintiffs have not alleged any legal theories that would hold LLC managers liable for breach of contract.

Because Plaintiffs have failed to allege that the Individual Defendants are parties to the AEP LLC Operating Agreement, or allege some other capacity in which the Individual Defendants may be held liable for breaches of the Operating Agreement, Plaintiffs do not state a claim for breach of contract against the Individual Defendants. The Court therefore grants Defendants' Motion to Dismiss Plaintiffs' Breach of Contract Claims Against Defendants Reagan, Hoover, and Campbell in its entirety.

This ruling does not bar Plaintiffs from amending their Complaint to assert a breach of contract claim against Defendant AG Processing, Inc. or to allege some other capacity in which the Individual Defendants may be held liable for breaches of the Operating Agreement. Plaintiffs are hereby granted leave to amend their Complaint to assert a breach of contract claim against AG Processing, Inc. or to allege some other capacity in which the Individual Defendants may be held liable for breaches of the Operating Agreement. **Within ten (10) days of the date of this Memorandum and Order**, Plaintiffs may file an Amended Complaint asserting a breach of contract claim against AG Processing, Inc. or alleging some other capacity in which the Individual Defendants may be held liable for breaches of the Operating Agreement.

### D. Failure to Fund Benefit Plan Claim

█ In Count V of the Complaint, Plaintiffs assert that, as members and employees of AEP LLC, they had a right to

---

59. *See Hecker v. Ravenna Bank*, 237 Neb. 810, 468 N.W.2d 88, 94 (1991) (a corporation's directors or officers are not personally liable on a corporation's contract unless the corporate directors or officers purport to bind themselves, or have otherwise bound themselves, to the performance of the contract).

participate in Defendant AG Processing, Inc.'s Restated/Thrift Profit Sharing Plan for Cooperatives ("Profit Sharing Plan"). Plaintiffs claim that Defendant AG Processing, Inc. made contributions on behalf of other members and employees of AEP LLC, but wrongfully excluded them from participating in its Profit Sharing Plan and did not make any contributions on their behalf. They further allege that they were not properly listed as exclusions in Defendant AG Processing, Inc.'s Profit Sharing Plan, and therefore were wrongfully denied an opportunity to participate in the Profit Sharing Plan. In their Complaint, Plaintiffs do not assert a cause of action under the Employee Retirement Security in Retirement Act of 1974 ("ERISA"), but rather assert a state law claim for "failure to fund 401K plan."

Defendants move to dismiss Plaintiffs' claim on the grounds that it is preempted by ERISA and because Plaintiffs have failed to exhaust their administrative remedies under the Profit Sharing Plan prior to seeking judicial relief under ERISA. Plaintiffs argue in response that their claim is not preempted by ERISA and, even if preempted, Defendants never provided a copy of the Profit Sharing Plan, including its administrative claims procedure, to Plaintiffs, and thus they could not avail themselves of any administrative remedies. Plaintiffs also argue that any effort to exhaust their administrative remedies would have been futile or inadequate. They request that the Court allow their claim to proceed without further exhaustion of administrative remedies or, alternatively, grant a stay of the proceedings so that they may obtain the appropriate Profit Sharing Plan documents and exhaust their administrative remedies.

### 1. ERISA preemption

Section 514(a) of ERISA,[60] preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA.[61] According to the United States Supreme Court, "[t]he term 'relate to' was to be given its broad common sense meaning, such that a state law 'relates to' a benefit plan in the normal sense of the phrase, if it has connection with or reference to such a plan."[62] ERISA's preemption clause applies to common law claims as well as state statutes.[63]

Applying this expansive standard, the Tenth Circuit has held that "common law tort and breach of contract claims are preempted by ERISA if the factual basis of the cause of action involves an employee benefit plan."[64] It will not, however, preempt state claims that only tangentially involve such a plan. What triggers ERISA preemption is an effect on the primary administrative functions of benefit plans, such as determining an employee's eligibility for a benefit and the amount of that benefit.[65]

---

**60.** 29 U.S.C. § 1144(a).

**61.** *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); *see also* 29 U.S.C. § 1144(a), ("[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.")

**62.** *Shaw,* 463 U.S. at 97–98, 103 S.Ct. 2890.

**63.** *Clark v. Humana Kansas City, Inc.*, 975 F.Supp. 1283, 1286 (D.Kan.1997); *see also Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 138–39, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).

**64.** *Id.*

**65.** *Airparts Co. v. Custom Ben. Servs. of Austin*, 28 F.3d 1062, 1065 (10th Cir.1994).

Here, the Court determines that Defendant AG Processing, Inc.'s Profit Sharing Plan is an employee benefit plan covered by ERISA. The Court further determines that Plaintiffs' claim, that they were wrongfully excluded them from participating in the Profit Sharing Plan and that Defendant AG Processing, Inc. failed to make contributions on their behalf, "relates to" that Profit Sharing Plan. Because Plaintiffs' claim "relates to" an employee benefit plan covered by ERISA, this claim is preempted by section 514 of ERISA. Because Plaintiffs' state law claim is preempted by ERISA and Plaintiffs have not otherwise pled a claim under ERISA in their Complaint, Defendants' Motion to Dismiss Count V (Failure to Fund 401 Profit Sharing Plan) in its entirety is granted. Again, however, the Court finds such deficiency to be procedural, and Plaintiffs may cure the defect by amending their Complaint. Plaintiffs are hereby granted leave to amend their Complaint to assert a claim under ERISA. Within ten (10) days of the date of this Memorandum and Order, Plaintiffs may file an Amended Complaint asserting a claim under ERISA.

## IV. Summary

For the reasons set forth above, Defendants' Motion to Dismiss is granted in part and denied in part. Defendants' Motion to Dismiss Plaintiffs' Breach of Fiduciary Duty (Count I) and Minority Oppression (Count III) causes of action, to the extent they allege derivative claims, is DENIED. Defendants' Motion to Dismiss Plaintiffs' Tortious Interference claims (Count II) in their entirety is DENIED. Defendants' Motion to Dismiss Plaintiffs' Breach of Contract Claim against Defendants Reagan, Hoover, and Campbell (Count IV) in its entirety is GRANTED. Defendants' Motion to Dismiss Plaintiffs' Failure to Fund 401 Profit Sharing Plan (Count V) in its entirety is GRANTED.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (doc. 4) is granted in part and denied in part as set forth herein.

**IT IS FURTHER ORDERED** that Plaintiffs are granted leave to amend their Complaint to assert a claim under ERISA, to assert a breach of contract claim against AG Processing, Inc., or to allege some other capacity in which the Individual Defendants may be held liable for breach of contract. Any such Amended Complaint **shall be filed within ten (10) days of the date of this Memorandum and Order.**

IT IS SO ORDERED.